## TAYLOR *v.* STATE.

### (*Nashville,* December Term, 1950.)

Opinion filed July 15, 1950.

Certiorari denied by United States Supreme Court January 8, 1951.

See 71 S. Ct. 350.

Designated for publication January 22, 1951.

L. E. Gwinn, Thomas L. Robinson and G. Ray Petty, all of Memphis, for plaintiff in error.

J. Malcolm Shull, Asst. Atty. Gen., for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

The plaintiff in error, who will be later on referred to as the defendant, was tried jointly with one William Louis York, Jr., under an indictment charging larceny and receiving stolen property. The indictment as found and returned by the grand jury contained four counts. Count 1 charged Taylor with being an accessory before the fact to larceny committed by his codefendant York. Count 2 charged York with fraudulent breach of trust. Count 3 charged Taylor and York with larceny in the following language: ". . . did unlawfully and feloniously steal, take and carry away The Sum of Four Thousand Four Hundred Ninety Seven & 43/100 ($4,497.43) Dollars, good and lawful money of the United States, a more particular description of which is to the Grand Jurors aforesaid unknown . . .".

Count 4 charges Taylor with receiving stolen property. Counts 1 and 2 were dismissed, and the defendants tried on Counts 3 and 4, to which both of the defendants entered a plea of "not guilty".

The jury found both guilty and fixed their punishment at not more than three years in the State penitentiary. A motion for a new trial was seasonably made, overruled and sentence pronounced by the trial judge, to which action of the court exception was taken by Taylor, and an appeal prayed and granted. York did not appeal.

Preliminary to the trial, and also at the beginning of the trial, the defendant Taylor moved the court for a severance and to permit his counsel to inspect a written statement or declaration alleged to have been made by Taylor relative to the crime charged in the indictment. The grounds for a severance were the following: (1) The defendants have antagonistic defenses. (2) "Evidence in favor of one of the defendants, admissible on a separate trial, would not be allowed on a joint trial." (3) Evidence, incompetent as to the defendant, Carlos E. Taylor, and competent as to York "would work prejudicially to the former". (4) That an alleged confession by the defendant, York, if introduced and proved, would be calculated to prejudice the jury against the defendant, Taylor. (5) On this ground the motion is argumentative as to the alleged antagonism between the two defendants as to the nature and extent of their defenses.

The grounds upon which the defendant moved the court for permission to inspect a supposed written confession by his codefendant York are found on pages 28 and 29 of the record. We find it unnecessary to refer in detail to this statement because it appears that counsel

was familiar with the alleged confession of York, the defendant Taylor being present when it was made and taken down by a typist. It is also argumentative as to whether or not it was a free and voluntary expression. Both motions were overruled and an exception noted.

The facts and circumstances upon which both York and Taylor were found guilty may be briefly summarized as follows: William L. York, Jr., was an employee of the Perkins Oil Company in the City of Memphis, doing clerical work and being trained for a position as Manager under the G. I. Bill. One of his duties was to obtain the weekly payroll from the bank. On May 27, 1949, he received, along with other papers to be delivered to the bank, a check drawn upon the Union Planters Bank, signed by the Vice President of the oil company, and made payable to "W. L. York, Jr., Agent" in the sum of $4,497.43. Prior to the presentation of this check the bank had been notified as to the amount of the payroll and the denominations in which it was to be paid. The entire amount had been placed in a sealed bag and was ready to be delivered to York when he presented the check for payment. He endorsed the check and received the money from the bank teller. About 3:00 o'clock on the same day he called up the Vice President of the Perkins Oil Company, who had signed the check, and reported that he had been held up and robbed. The call was made from a grocery store in South Memphis. Upon instructions he awaited the arrival of officers to whom he stated that he had been held up by two unidentified white men. He was detained over night and was interrogated by police officers, but was released on the following morning. From the date that York cashed the check and reported the alleged robbery he was interviewed from time to time

by officers of the law and was finally placed under arrest on July 18, 1949. On the afternoon of that day he was asked by a city detective as to where he obtained the money to buy certain furniture. He replied that a friend, whose name he declined to give without the friend's permission, loaned it to him. The amount of the loan was $500.00. Later the officers interviewed Taylor at the latter's restaurant and he stated he had loaned York $100.00. He changed this statement by saying the amount was $500.00, giving as a reason that he did not want anyone, especially his wife, to know he was loaning money. He took no note or other evidence of this indebtedness.

York was detained over night. During the evening of July 18 the officers interviewed his wife at her home for about three hours. On the following morning a detective called Mrs. York and brought her to the city jail in a police car to see her husband. She was not under arrest and was not forced to accompany the officers. At the suggestion of one of the detectives she called Taylor at his restaurant and made an appointment to meet him that afternoon at a designated place. At this meeting she told Taylor her husband was being detained and she needed some money to buy food for their child and to pay rent. The defendant Taylor stated he had only $7.00 or $8.00, which she declined. He promised to try and obtain some money for her. She reported to the police what had occurred at this meeting and thereupon another appointment was made for Taylor to meet her at the "Hitching Post". At this second meeting between Mrs. York and Taylor he brought $50.00, taking it from the cash register in his restaurant. This occurred on July 19, the day after York was taken into custody. The

officers took Taylor in custody at this second meeting with Mrs. York, and they were taken to the police station for questioning. In the meantime York had made an incriminating statement "in which he said he would give a statement regarding the alleged hold up in the presence of Mr. Taylor". The defendant Taylor denied knowing anything whatever about any "hold up" or the alleged loss of the payroll. On the evening of the 19th of July, York and Taylor were brought together in the presence of several officers and four or five business men. At which time York made a full confession. It was made in writing and sworn to before a notary. Before he made the confession an officer was sent for Mrs. Taylor. She, with her five year old child, was brought to the police station about 9:00 o'clock. The wives of the two defendants were present when York confessed and also when the defendant Taylor later made a confession of participating in the crime. These confessions were strenuously objected to by both defendants upon the ground that they were made under duress. The trial judge, following an extensive hearing of witnesses in the absence of the jury, held that they were freely and voluntarily made and allowed them to be read to the jury over the defendants' objections.

This action of the trial judge is assigned as error, counsel for defendant insisting (1) "There was no proof of the corpus delicti when these statements were offered in evidence". (2) "The confessions were not the free and voluntary statements of the accused".

The substance of York's confession (made in Taylor's presence) is that he had become acquainted with his co-defendant by having eaten lunch in the latter's restaurant; that they had gambled some in Taylor's home;

that Taylor suggested the fake holdup; that it was agreed that on the next payday York would call Taylor and advise him when he would be at a certain point with the money, which he did, and that Taylor met him in a cream colored Mercury sedan; that he York got in the car and laid down on the floor board where he remained until Taylor slowed down and let him out; that he left the payroll in the car and called the police and reported a holdup; that he received from Taylor approximately $2,000.00, being paid in $100.00 and $200.00 lots at different times; that Taylor still owed him approximately $230.00 out of his half of the stolen money. He further stated he concocted the story about the loan of $500.00 to explain the source of money expended for furniture.

When the foregoing confession had been completed in Taylor's presence he was asked if it were true. He replied that it was except that York had suggested the plan of stealing the money and he did not owe him anything.

Several officers, including Inspector Hinds, and a business man who was present, testified that they made no promises to either defendant to obtain the confessions and no pressure was brought to bear upon them to induce a statement. On the contrary York insisted that the Inspector, or other officers, promised to make it light on him if he would implicate Taylor, and he was worried because of his wife's presence at the jail, etc. Another reason was he feared the officers might tell his wife about some charges of alleged sex perversions which had been made against him.

The defendant Taylor contended that he was not guilty and that he was "up set" because of his wife and child being kept at the jail until a late hour, and he confessed

so that they might be allowed to go home (it was then after 12 o'clock at night).

Contention is further made that Taylor was under duress because he was not allowed to call his lawyer; that he was told "he didn't need a lawyer" and that "a lawyer would not do him any good" etc. This, however, was expressly denied by those present and presented an issue of fact for the court in deciding the admissibility of the confession, and also the weight to be given the confession by the jury as to its truth or falsity. As throwing further light on the question of whether Taylor's confession was made under duress or otherwise, we refer to the following examination of him by his counsel:

"Q. Well, then what happened, if anything while you were in this office when all these parties you have named were there? A. Well, they introduced me to those men. They set me down in front of Mr. York, about 5 feet from him.

"Q. Then what happened? A. They started questioning Mr. York.

"Q. What did they say with respect to you? A. Well, they didn't say anything to me at that time, that is, until after they got through with Mr. York, got through taking his statement. They said to me, 'Do you want to make a statement?'

"Q. What did you say? A. I said, 'No, I don't want to make a statement.' Chief Hinds and Chief Armour persuaded me if I would tell the truth it would be easier on me. They said if I would sign a statement it would be better for me. I told them I had rather not make a statement without my attorney being there to represent me.

"Q. Did anything else happen about you calling or seeing anyone? A. After they had me, questioned me for about an hour and a half I asked if anybody had called my wife to tell her to close up my place of business. Chief Hinds told me I could call my wife.

"Q. What was your condition at that time? A. I didn't know what to think. It got me all upset. I had new help out there in my business and I didn't know whether my wife knew where I was."

 There is no merit in the defendant's contention that there was no proof of the corpus delicti when the confessions were offered in evidence. The corpus delicti was established when it was shown that a felony had been committed, i. e. the failure of York to deliver the payroll to the Vice President of the Perkins Oil Company and his false statement that he had been robbed. Moreover it is settled law in this State that the corpus delicti may be shown by circumstantial evidence and while "undoubtedly some evidence of the corpus delicti should precede the introduction of the confessions of the prisoners, to the extent at least of showing prima facie that a crime has been committed", if the wrong order be followed in the trial court it is not reversible error. *Ashby* v. *State,* 124 Tenn. 684, 697-699, 139 S. W. 872. See also *Harless* v. *State,* 189 Tenn. 419, 225 S. W. (2d) 258, 259.

 The transcript of the record in the case at bar consists of over 500 typewritten pages, one-half of which is devoted to evidence heard by the trial judge in the absence of the jury to enable him to correctly decide if the confessions were freely and voluntarily made or made under fear or hope of reward. Where the evidence is sharply in conflict upon this issue, as it is in the case at bar, the trial judge should not be put in error for

ruling that the confessions are admissible unless the evidence clearly preponderates in favor of the defendant's contention that they were not freely and voluntarily made. It is true that in many cases the trial judge might be in error, as a matter of law, in his refusal to exclude certain confessions. But we have no such case presented here. Moreover the evidence does not preponderate against the ruling of the court.

We are not in disagreement with counsel for defendant as to certain propositions of law (1) that confessions induced by hope or fear are inadmissible, (2) that "to render a confession involuntarily it is not necessary that physical force be used", citing *Churn* v. *State*, 184 Tenn. 646, 202 S. W. (2d) 345; *Malinski* v. *People of State of N. Y.*, 324 U. S. 401, 65 S. Ct. 781, 89 L. Ed. 1029, and other cases. But these cases are not controlling because they involve different factual situations. We have no patience with what is referred to as "third degree methods" in ferreting out crime as shown by our repeated decisions, and especially in *Rounds* v. *State*, 171 Tenn. 511, 106 S. W. (2d) 212; *Ford* v. *State*, 184 Tenn. 443, 201 S. W. (2d) 539.

Responding now to the contention of counsel that "arrests for investigation are not countenanced by the constitution and statutes of this State" it should be stated that the defendants were not arrested "for investigation" but were taken into custody because a felony had been committed, admittedly so, and the officers had reasonable grounds for believing that York and Taylor had committed it. In these circumstances their apprehension and detention were authorized. *Thompson* v. *State*, 185 Tenn. 73, 203 S. W. (2d) 361, and cases there cited and quoted from with approval. Confessions or

admissions are held in this State not to be incompetent because of the fact that the person making them was under arrest or confined in a place of detention at the time. *Wiley* v. *State,* 43 Tenn. 362; *Moody* v. *State,* 159 Tenn. 245, 17 S. W. (2d) 919; *Wynn* v. *State,* 181 Tenn. 325, 181 S. W. (2d) 332; *McGhee* v. *State,* 183 Tenn. 20, 189 S. W. (2d) 826, 164 A. L. R. 617. It is not duress to bring an accused and his accuser face to face. Nor is it an uncommon practice during the investigation of crimes.

There is no question but that one who is under formal accusation of a felony is entitled to be represented by counsel. *Poindexter* v. *State,* 183 Tenn. 193, 191 S. W. (2d) 445. But in the case at bar the defendants had been apprehended and taken into custody one day prior to the signing of confessions. York had made no request for counsel. His wife knew that he was in custody and was free to aid him by procuring counsel. The evidence is in sharp conflict as to when the defendant requested the right to see his lawyer, whether it was before or after his confession. But aside from this issue of fact it appears that defendant knew that his answers to questions could be used against him. This is shown to be true because he voluntarily answered some questions and refused to answer others. If he could answer such questions as he wished to answer and refuse, with apparent impunity, to answer other questions it cannot be said that he was embarrassed by not having his lawyer present. Had he requested the right to counsel immediately upon being arrested, a refusal to grant such a request would constitute a strong circumstance confirmatory of "third degree" methods, and that his confession was obtained by duress. This

is a controversial issue, however, and the evidence does not preponderate against the final ruling of the court.

Contention is made by counsel for Taylor that York's confession was induced by hope of receiving a light sentence and also resulted from "psychological duress", and the court erred in holding it admissible. We find no abuse of discretion in this ruling of the court, *Beggarly* v. *State,* 67 Tenn. 520, 526. Moreover if we concede the fact that it was obtained by force it was admissible against the defendant Taylor since he voluntarily confessed that it was true.

We pass to other assignments of error under the general heading on the brief of counsel "Questions Raised by the Appeal":

(2) "Whether there is any material evidence to support the verdict under Count III, charging larceny, or any material evidence to support the verdict under Count IV, charging the defendant Taylor with receiving stolen property."

(3) "Whether evidence showing or tending to show fraudulent breach of trust will support a conviction under an indictment charging larceny in the language of Section 10920 of the Code of Tennessee."

We will pretermit any consideration of assignment (4) complaining that the trial judge erred in not directing a verdict for the defendant. We have held in cases too numerous to require citation that the failure to direct a verdict in criminal cases cannot be made the basis of an assignment of error.

(5) Error of the trial judge for refusing to charge Special Request No. 4 relating to Count III of the indictment charging the crime of larceny. The substance of the request was that the jury should not find the de-

fendants guilty of larceny although "they may be of opinion that they were guilty of embezzlement or fraudulent breach of trust".

The foregoing assignments will be considered collectively. We think the trial judge was correct in refusing to charge the "Special Request 4" because the third count in the indictment charging York with fraudulent breach of trust was dismissed by the court, on motion of the Attorney General, and hence was not an issue in the case. The defendant's counsel erroneously assumes that York came into possession of the payroll lawfully and its later fraudulent appropriation was an embezzlement or fraudulent breach of trust and could not warrant a conviction of larceny under Code Section 10920, which provides: "Larceny is the felonious taking and carrying away the personal goods of another, and is either grand or petit." Contention is further made that the evidence is wholly insufficient to convict Taylor under Count IV charging him "with receiving stolen property".

Had the defendant York received the payroll lawfully and in good faith with an honest purpose of delivering it to the Perkins Oil Company there might be some basis for defendant's contention. The statement of the Vice President of the company that York had the right to receive the payroll presupposed that there had been no prior conspiracy to rob the company. We find that the evidence shows beyond a reasonable doubt that York and Taylor had conspired between themselves to commit the crime of larceny and hence the acceptance of the payroll from the bank by York was itself a felonious taking of the property. According to both confessions the defendants agreed to use York's employment as a means of obtaining possession of the payroll with

the criminal intent to appropriate it and thus deprive the true owner of it.

The official Code of 1932 defines fraudulent breach of trust, Sections 10964, 10965, and in Section 10967 distinguishes that crime from larceny. But the Section which is clearly applicable to the facts of the case at bar is 10923 of Williams' Code and reads as follows: *"Contract with fraudulent intent.*—If a contract of loan for use, or of letting and hiring or other bailment or agency, be used merely as the means of procuring possession of property with an intent to make a fraudulent appropriation at the time, it is larceny."

In a footnote to this Section it is said: "This section dispenses with the necessity of a technical trespass. The trespass in cases under this section *is in the fraud* practiced upon the owner, by which the possession is acquired with felonious intent." Citing cases. (Emphasis ours.)

We find no merit in assignments of error (6) complaining of error in refusing to charge a special request as to the weight the jury should give to a confession, because it was fully covered in the general charge, or (7) for error in allowing Lt. Huddleston, a detective, to testify to certain facts in rebuttal, because it was within the court's sound discretion, *Waller* v. *State,* 178 Tenn. 509, 160 S. W. (2d) 404; *Colbaugh* v. *State,* 188 Tenn. 103, 216 S. W. (2d) 741, 743, or (8) for refusing to grant a mistrial because of prejudicial remarks of the court, because much that is complained of was not said in the presence of the jury. *Brooks* v. *State,* 187 Tenn. 67, 213 S. W. (2d) 7.

We are furthermore of opinion that the trial judge did not abuse his discretion in refusing a severance

at the request of the defendant Taylor. In a separate trial York's confession would have been competent as against Taylor, it being made in the latter's presence. *Woodruff* v. *State,* 164 Tenn. 530, 51 S. W. (2d) 843; *Stallard* v. *State,* 187 Tenn. 418, 428, 215 S. W. (2d) 807.

 Finally it is insisted that the court committed error in not fully charging the defendants' theory. While the theory of defendants was limited to a statement that they denied their guilt and "that the State had failed to prove their guilt beyond a reasonable doubt", it clearly appears from the court's charge that they denied the truth of matters contained in the confessions. The principal issue in the case was the truth or falsity of these confessions, and it could hardly be denied that defendant's contention that they were untrue and were obtained by duress was forcibly presented by counsel.

The assignments of error are overruled and the judgment of the trial court is affirmed.

All concur.