EDGAR DUPES

*v.*

STATE OF TENNESSEE

354 S. W. 2d 453.

(*Knoxville,* September Term, 1961)

Opinion filed February 8, 1962.

Rehearing Denied March 7, 1962.

BILLY R. RIDENOUR, J. LEWIS KINNARD, Sweetwater, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, for the State.

MR. JUSTICE FELTS delivered the opinion of the Court.

Plaintiff in error, Edgar Dupes, was jointly indicted with Gene Kirkland and Clifford Bright for the murder of J. R. Giles. A severance was granted as to Bright. Dupes and Kirkland were tried together, both found guilty of murder in the first degree, and each sentenced to serve a term of 50 years in the state penitentiary.

We have only the case of Dupes before us. Kirkland withdrew his motion for a new trial, did not appeal, but acquiesced in the judgment. Dupes' motion for a new trial was overruled, he appealed in error and has assigned a number of errors challenging the sufficiency of the evidence to sustain his conviction, and seeking a reversal and a new trial upon a number of other grounds.

The trial of Dupes and Kirkland lasted about a week, making a large record. The proof for the State was that J. R. Giles was shot and killed at his home in Monroe County, Tennessee, about 3:30 P.M. February 6, 1960.

It appears he came out of his house to his nearby wood-pile, picked up an armful of stovewood, and as he started into his house, was shot in the back more than once with a shotgun, the shot entering his back all the way from his belt to the back of his head. Three fired 12-gauge shotgun shells were found behind a slab pile some 60 feet from where his body lay.

Evidence for the State was that Kirkland, Dupes and Bright entered into a plan or conspiracy to rob J. R. Giles, who was said to have money. On the afternoon shortly before the killing, they put a loaded shotgun in an automobile and went to the home of Giles to accomplish their design. Dupes drove the automobile along the road leading to Giles' home, stopped at the old Glendale schoolhouse nearby, Bright and Kirkland (the latter with the shotgun) got out of the car and walked to Giles' house, while Dupes waited in the car for them to return with the money they expected to get by the robbery.

It appears that Kirkland and Bright walked to deceased's home, hid behind a slab pile nearby, and waited for him to come out. In a few minutes, he came out to the woodpile, picked up some wood, turned and started into the house, when Kirkland started shooting him with the shotgun, which was a bolt action repeater. When he fell, Kirkland ran to him, took hold of him, and told Bright to help him. Bright "got hold of his shoulders," and Kirkland "had hold of his legs." Bright became frightened and ran back to the car where Dupes was waiting for them. Dupes asked Bright if they "got the money"; and Bright replied: "No, Gene killed him." They waited some four or five minutes and Kirkland

came back and said: ''Let's go, the law might be through here any minute''; and they left in the car, Dupes driving.

They drove to the place of Charlie West, where Bright got out of the car with the shotgun and later went home. Dupes and Kirkland, after driving around in the neighborhood and picking up 5 or 6 others, returned to the scene of the killing, where a large crowd had gathered. While there, Kirkland said: ''Whoever done this must have had a hard shooting gun. I have one but it won't shoot through a man as big as he is.'' Also, a small dog reared up on Kirkland and he told the dog to ''get down, you will be making them think I done this.''

Many of the foregoing details were testified to by Bright, who testified as a witness for the State; and he was corroborated by other witnesses in many of the collateral circumstances. He testified that while at the jail and in the presence of Dupes and Kirkland, he made a statement to the officers which was the same as his testimony and that Dupes said ''that was about right.'' This is supported by the testimony of Officer Bearden of the Tennessee Bureau of Investigation, who was present and heard this statement of Dupes.

Plaintiff in error Dupes denied any connection with the killing, and sought to prove an alibi, but the evidence failed to support it. He said he was pretty drunk on the afternon of the killing, and didn't clearly remember what had happened. He, however, admitted being in the car with Kirkland driving around in the neighborhood of the scene of the killing. While he said he did not remember seeing Bright that day, he admitted that the statement Bright had made to the officers was

read to him and that he stated that Bright's statement "matched up with the one I made pretty well."

He here referred to a statement which he had made in the presence of Walter Bearden, T.B.I. Agent, Sheriff Cooley and two of the latter's deputies, and which was reduced to writing, signed by Dupes, and witnessed by these officers (see Ex. 14 to test. of Bearden). While that statement was not a confession, it implicated Dupes to a considerable extent. In it he said that Kirkland put a shotgun behind the front seat of his car and they were riding around, and Kirkland told him to "back up to the Old Glendale schoolhouse and wait for him [Kirkland]"; that "he [Kirkland] had a score to settle"; that he stopped the car there and Kirkland got out of the car, taking the gun, and said to wait, he would be back.

Dupes said, in that statement, that he waited there in the car and in about 20 minutes Gene Kirkland came back and put the gun in the car and said: "Let's go, that score is settled." He further said that they went back to his house and Kirkland left the gun there. He also stated that he and Kirkland, with others, went to the scene of the killing, viewed the body there, and that they were there arrested.

While admitting that he had made this statement, he said that it was not the truth but he had made it because the Sheriff had told him that his car had been seen sitting at the school house and he testified: "I figured I was there then. * * * I thought at the time it could have happened." Then he later said he had made the statement to the officers because he wanted to get out of jail

and thought if he did get out he could find out what happened.

Upon full consideration, we think the evidence established plaintiff in error's guilt beyond a reasonable doubt. The verdict of the jury, approved by the Trial Judge, accredited the testimony of the witnesses for the State, and established their credibility. *Ivy v. State,* 197 Tenn. 650, 652, 277 S.W.2d 363. It also displaced the presumption of defendant's innocence, raised a presumption of his guilt, and put on him the burden of showing that the evidence preponderates against the verdict. *Anderson v. State,* 207 Tenn. 486, 341 S.W.2d 385, 389, and cases there cited.

He failed to carry that burden. On the contrary, the proof establishes that plaintiff in error, Kirkland, and Bright, entered into a concert to rob Giles; and, in attempting to do that, they killed him. A murder committed in the prepetration of, or attempt to perpetrate, *"robbery"* *"is murder in the first degree"* (T.C.A. sec. 39-2402).

■ ■ When they thus entered upon a common design to commit a felony, the natural and probable consequences of which involved the contingency of taking human life, all were responsible for the acts of each committed in furtherance of such design even though the killing was not specifically contemplated. *Williams v. State,* 164 Tenn. 562, 569, 51 S.W.2d 482; *Irvine v. State,* 104 Tenn. 132, 56 S.W. 845; *Moody v. State,* 46 Tenn. 299, 306.

■ It is asserted that the Trial Judge erred in refusing to put the State's witnesses, the Sheriff and his depu-

ties, under the rule during the trial. It appears from the bill of exceptions that at the beginning of the trial one of defense counsel stated that they would like to demand the rule as to all witnesses, including the Sheriff and other officers; and that the Trial Judge stated that the motion was granted as to all except the court officers, or officers waiting on the court.

But the bill of exceptions does not show whether or not any witness was put under the rule; nor does it show that any officer was in the courtroom and heard any other witness testify, or that any objection on that ground was made to the testimony of any witness who testified for the State.

So, there is nothing to support this assignment of error. The assertion in the motion for a new trial that the court refused to place the Sheriff and his deputies under the rule is not sufficient, because such motion is a mere pleading and not proof of the truth of the fact asserted; and affords no basis for this assignment of error. *Sherman v. State,* 125 Tenn. 19, 140 S.W. 209; *Koehn v. Hooper,* 193 Tenn. 417, 246 S.W.2d 68; *Beadle v. State,* 203 Tenn. 97, 101, 310 S.W.2d 157; *Bradford v. State,* 208 Tenn. 500, 347 S.W.2d 33.

■ It is assigned for error that the Trial Court refused to allow plaintiff in error to peremptorily challenge juror No. 12, Leslie Garren, after he had been accepted both by the State and the defense, but before the jury had been sworn and while the defense had not used all of the peremptory challenges to which they were entitled.

It appears that after the jury had been accepted by both sides, defense counsel moved that juror No. 12, Mr.

Garren, be removed, and stated that this juror had "inadvertently stated" on his *voir dire* examination "that he had not talked to any of the witnesses," but that counsel had been informed that the juror had been at Bob Sloan's store and had heard the State's witness, Mrs. Mamie Lee Butler, in a conversation with him and others at the time, without knowing that she was to be a witness.

The Trial Judge investigated this matter. Mrs. Butler was examined under oath first by the Judge and then by defense counsel. She had been subpoenaed as a witness by both sides, but it does not appear that she was put on by either side. It seems on hearing of the killing, she, like many others in the neighborhood, went to the scene, saw the body, but did not know any of the facts of the crime. Sometime later, at Sloan's store, in the presence of him and his wife and Mr. Garren, she mentioned that she had seen the body, but did not say anything else.

Upon this showing, the Trial Judge overruled the motion to remove Juror Garren. He held that since Mrs. Butler had not stated any material fact in her conversation at the store, and that since the juror had stated that he had not formed or expressed any opinion in the case, there was no ground to disqualify him and no ground for peremptory challenge of him after he had been accepted by both sides.

We think this ruling was correct. The fact that a prospective juror has read about a case in a newspaper or heard some person mention it, is not sufficient to disqualify him if he is otherwise qualified and if he states on oath that, notwithstanding what he read or heard,

he believes he can give the defendant a fair and impartial trial upon the law and the evidence. *Manning v. State,* 155 Tenn. 266, 277, 292 S.W. 451; *O'Brien v. State,* 205 Tenn. 405, 420-421, 326 S.W.2d 759; *Smith v. State,* 205 Tenn. 502, 533, 327 S.W.2d 308.

■ Plaintiff in error asserts that the Trial Court erred in admitting, over his objection, testimony of Sheriff Cooley as to statements made by him "which were obtained against his constitutional rights." Thus, the assignment does not point out how his constitutional rights were violated. Nor is there any proof or any claim of any mistreatment of him, nor of whipping or of threats, or coercion upon him to make the statement, the admission of which is complained of.

In learned counsel's discussion of this assignment, the only complaint is based upon the length of time plaintiff in error was held in custody. The proof is that he was arrested on Saturday afternoon about 4 or 5 o'clock and was confined in jail until the following Monday afternoon—some 48 hours—when he sent word to the officers that he wanted to talk to them; and they went to the jail, and he made the statement admitted in evidence.

In these circumstances, it is clear there was no violation of the constitutional rights of plaintiff in error and no ground for excluding his statement. *Wynn v. State,* 181 Tenn. 325, 330, 181 S.W.2d 332; *Ford v. State,* 184 Tenn. 443, 456-458, 201 S.W.2d 539; *Taylor v. State,* 191 Tenn. 670, 681, 682, 235 S.W.2d 818; *East v. State,* 197 Tenn. 644, 648, 277 S.W.2d 361.

■ It is said that the Trial Court erred in refusing to permit counsel for plaintiff in error fully to cross-

examine each witness offered by the State. It seems that the basis for this complaint is that at the beginning of the trial counsel for plaintiff in error stated that he would want fully to cross-examine each of the State's witnesses without regard to cross-examination in behalf of the other defendant.

The Trial Court stated that while it would not permit cross-examinations which were mere repetitions of the same matters already brought out, it would, where it appeared necessary, permit cross-examinations of each witness by counsel for both defendants.

Counsel for plaintiff in error, however, do not point out any instance where he was denied the right to cross-examine any of the State's witnesses as fully as he desired to do. In fact, a reading of the record showed that the Trial Judge permitted counsel for each defend-ant to conduct his own separate cross-examination of the witnesses as fully as could seem necessary. There is no merit in this objection.

It is asserted that the Trial Court prejudiced the rights of plaintiff in error by placing State's witness Harold Akins, who had been declared hostile to the State, under a $1,000.00 bond for perjury in open court in the presence of the jury.

This witness had testified before the Grand Jury and was put on as a witness for the State. But, to the surprise of the District Attorney General, the witness changed his story and brazenly admitted having done so. The Court then allowed him to be cross-examined by the State as a hostile witness. He was then severely cross-examined and charged with perjury by counsel for

defendant Kirkland. The State had vouched for him by introducing him and he openly admitted his perjury.

So, it does not appear that, in ordering the arrest of the witness, the Trial Judge did any more to discredit him than he had already boldly admitted on the witness stand before the jury; and we think it does not affirmatively appear that this action prejudiced plaintiff in error or affected the result of the trial, and is no ground for a reversal. T.C.A. secs. 27-116, 27-117.

Finally, complaint is made of a part of the Trial Judge's charge to the jury. Upon full consideration, we can perceive no fault in the charge or how it could have tended to mislead the jury or could have harmed plaintiff in error.

This disposes of all the questions made by the assignments of error. All of them are overruled and the judgment of the Trial Court is affirmed. Plaintiff in error will be given credit on his sentence for the time during which he has been imprisoned in jail.

On Petition To Rehear

Plaintiff in error has filed a petition asking a rehearing upon two points.

*First.* It is asserted that petitioner was prejudiced before the jury by the action of the Trial Judge in ordering State's witness Harold Akins to be arrested and placed under bond on the charge of perjury. The rule relied on is that the ordering of the arrest of a witness under such circumstances is "an invasion of the rights of the *party offering the witness*" (*State v. Swink,* 151 N.C. 726, 66 S.E. 448). Petitioner did not offer this wit-

ness, and it is not pointed out how the arrest could have harmed his rights.

*Second.* The petition reasserts his same complaint upon the Trial Judge's charge as to the punishment in the event the jury found defendants guilty of murder in the first degree with mitigating circumstances. This part of the charge was substantially in the language of the statute (T.C.A. sec. 39-2406) ; and it is not pointed out how it could have prejudiced petitioner.

Thus, the petition presents nothing new, no matter of fact or law overlooked, but reiterates matters already fully considered and determined in our former opinion.

The petition is denied at petitioner's cost.