IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 27, 2019

## STATE OF TENNESSEE v. ELIZABETH LYNN SCHMITZ

**Appeal from the Circuit Court for Humphreys County**
**No. 13003-B Larry J. Wallace, Judge**

_____

### No. M2018-01270-CCA-R3-CD

_____

A Humphreys County jury convicted the Defendant-Appellant, Elizabeth Lynn Schmitz, of failure to have a license to operate a pawnshop in violation of Tennessee Code Annotated section 45-6-205, a Class A misdemeanor, for which she received a probationary sentence of eleven-months and twenty-nine days. In this appeal as of right, the Defendant argues that the trial court erred by not providing her a court reporter during trial and that the evidence was insufficient to sustain her conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which TIMOTHY L. EASTER, and J. ROSS DYER, JJ., joined.

Olin J. Baker (on appeal), Charlotte, Tennessee, and Michael W. Patrick (at trial), Waverly, Tennessee, for the Defendant-Appellant, Elizabeth Lynn Schmitz.

Herbert H. Slatery III, Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; Ray Crouch, District Attorney General; and Joseph Hornick, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

This case began in June 2013, when the Humphreys County Grand Jury returned a presentment charging the Defendant and her husband with two misdemeanors: failure to have a license to operate a pawnbroker's business on July 27, 2012 (count one); and failure to allow a person to redeem pawned property on June 27, 2012 through September 12, 2012; specifically, an Apple iPad pledged by Drema Reppert (count two). Shortly thereafter, the Defendant was arrested, posted a cash bond, and appeared in court. On the August 12, 2013 "Waiver of Right to Have Appointed Counsel" form, there is a

handwritten note showing that the Defendant was "determined to be able to hire counsel by this court, but Defendant does not want to hire an attorney." The Defendant was nevertheless appointed initial counsel, but initial counsel was permitted to withdraw on August 26, 2014, based on a conflict. Trial counsel was appointed the next day, and an order memorializing the appointment was filed on September 16, 2014.

In February 2015, the Humphreys County Grand Jury charged the Defendant by superceding presentment with an additional count of theft of property valued under $1000 from the same victim and on the same day as reflected in count two. Although the Defendant was represented by counsel, the record shows that she filed several pro se motions prior to trial, including a March 10, 2016 motion to return bond; a motion to dismiss with a supporting memorandum based on a speedy trial violation (same day); a June 13, 2016 motion to dismiss court appointed lawyer; and a June 24, 2016 motion to reconsider the motion to dismiss. On June 28, 2016, the trial court entered an order denying the Defendant's motion to dismiss her appointed lawyer. The record does not show the disposition of any of the other motions. The actual trial is not memorialized by minute entry in the record. However, the record shows preliminary jury instructions were filed on June 28, 2016. The record also includes a verdict form showing that on the same day, the Defendant was found guilty by a jury of failure to have a license to operate a pawnbroker's business.

The record contains two judgments entered on June 28, 2016. One judgment shows that the Defendant was found guilty of failure to have a license to operate a pawnshop; however, the sentence is not filled out. The special conditions section shows the matter was set for a status date on July 28, 2016. The second judgment shows that the Defendant was found not guilty of failure to allow a person to redeem property. The Defendant filed a notice of appeal in this court on July 7, 2016, which was dismissed without prejudice as premature. On July 28, 2016, the record shows that the Defendant, still represented by trial counsel, filed a motion for new trial on her own behalf. In her motion, the Defendant argued, among other things, ineffective assistance of trial counsel in failing to represent her properly at trial. On December 9, 2016, the trial court issued an order finding, yet again, that the Defendant was indigent and appointing new counsel (third counsel) to represent her. The record does not reveal the disposition of the other issues raised in the Defendant's motion or the basis for appointing new counsel.

New counsel filed a notice of mitigating factors and an ex parte motion for a court reporter to be present at the sentencing hearing, which was granted by the trial court. The record however does not include a transcript from the sentencing hearing. On June 23, 2017, two additional judgments were filed in this case. The judgment for failure to have a license to operate a pawnshop shows that the Defendant received a suspended sentence of eleven months and twenty-nine days. The special condition section notes as follows:

Defendant shall receive credit on her Probation from June 28, 2016-May 8, 2017[.] Court cost shall be paid from the Defendant's case bond on deposit in the Circuit Court Clerk's Office and any remaining funds shall be returned to the Defendant[.]

The second judgment, as reflected in the judgment from June 2016, shows that the Defendant was found not guilty of failure to allow a person to redeem property.

On July 13, 2017, new counsel filed a motion for new trial arguing that the jury's verdict was not supported by the evidence and that the trial court erred in failing to provide the Defendant with a court reporter at trial. At the motion for new trial on May 18, 2018, new counsel argued that the Defendant was entitled to a court reporter at trial because the trial court had determined she was indigent and, as such, she should have had a court reporter appointed by the State. New counsel also argued that a transcript of the trial was significant because the Defendant was subsequently indicted for aggravated perjury based on her testimony during the trial in the instant case. New counsel argued further that the transcript was necessary for appellate review. In response, the State argued that the Defendant was represented by counsel at trial, and he did not request a court reporter. Accordingly, this issue is waived. The State also pointed out that the Defendant had a means available to her to procure a written statement of the facts for purposes of appellate review and that the there was sufficient proof supporting the Defendant's conviction in this case. Even if the Defendant were granted a new trial, the State argued that it would not impact the pending aggravated perjury charge because nothing would change the fact that the Defendant provided false testimony under oath at a hearing.

In denying the motion for new trial, the trial court stated, in relevant part, as follows:

> The Court remembers this case very well, probably in the top ten of cases I remember. . . .
>
> And going just over all sufficiency of the evidence, the Court finds there was sufficient evidence for the jury to find the verdict that they returned. [The Defendant] did not make a real good witness on the stand, I didn't believe, and I think the jury probably felt that way too.
>
> As far as the court reporter issue, the Court believes that the issue is waived because it wasn't requested at the time[;] therefore the Motion for New Trial is respectfully denied.

- 3 -

The trial court subsequently reviewed competing statements of evidence in this case and determined by written order on February 14, 2019, that the Statement of Evidence submitted by the State on November 13, 2018, was more accurate. See Tenn. R. App. P. 24(c), (e) (providing that any differences regarding the accuracy of statements of the evidence are settled by the trial court whose determination is conclusive upon this court absent extraordinary circumstances).[1] It was adopted and incorporated into the record on appeal. The statement of evidence provided, in pertinent part, as follows:

> This matter was tried by a jury in the Circuit Court for Humphreys County, Tennessee, at Waverly on June 28, 2016. Prior to the trial, the State announced that it was dismissing Count Three of Docket Number 13003, a theft. The State's first witness was Drema Reppert. Ms. Reppert testified that she encountered [the Defendant] on or about July 27, 2012. Ms. Reppert testified that [the Defendant] owned and operated a business known as Happy Hour Swap Shop in McEwen, Tennessee. Ms. Reppert testified that on or about July 27, 2012, she encountered the Defendant, owner of The Happy Hour Swap Shop, and pawned an iPad for $70 with the agreement that Ms. Reppert would get it back when she got paid. Ms. Reppert testified that she went to the Happy Hour Swap Shop a couple of weeks later and there was no one there. Ms. Reppert testified that she then later called the Defendant about getting her iPad and the Defendant said she would get back with Ms. Reppert. Ms. Reppert testified that she attempted to get her iPad 4-5 times prior to calling the police. Ms. Reppert testified that the iPad had been purchased (and financed) for $800.00. Ms. Reppert identified a receipt and business card that she received from the Defendant for the iPad that were entered as Collective Exhibit #1.

> Collective Exhibit #1 identified by Ms. Reppert included a receipt made out to Drema Reppert, dated July 27, 2012, and included Ms. Reppert's address and phone number, and stated "Swap Pawn on pod for one month $70.00" "Buy Back $90.00 8/27/12[.]" The hand-written receipt also included, in handwriting at the top "Happy Hour Swap Shop 931-446-4045."

---

[1] We presume that the Defendant submitted a written statement of the evidence to the trial court. However, her statement of the evidence, albeit rejected by the trial court, is not included in the record on appeal.

Collective Exhibit #1 also included a business card titled "Happy Hour Swap Shop" with the words "Buy Sell Trade Pawn Rent" on it, along with a phone number and the names "Liz & Rick Schmitz."

Ms. Reppert was cross-examined about her prior criminal record and testified that she worked at a restaurant and was just trying to make a living and needed some money. The State's second witness was Chief Eric Jernigan of the McEwen, Tennessee Police Department. Chief Jernigan testified about taking a report from Ms. Reppert in the case and identified the receipt and card received by Ms. Reppert and submitted as Collective Exhibit #1. The State's third and final witness was 23rd Judicial District, District Attorney Criminal Investigator John Ethridge. Mr. Ethridge testified that he also took a report from Ms. Reppert and received the receipt and business card entered as Collective Exhibit #1. Mr. Ethridge also testified that he checked with the Humphreys County Court Clerk's office and that no pawn license had been issued in McEwen or to [the Defendant].

The Defendant, Elizabeth Schmitz, testified on her own behalf. Prior to the Defendant testifying, the Court went over her rights with her regarding testifying on her own behalf and not testifying on her own behalf, as set forth in Momon vs. State, 18 S.W .3d at 163 (Tenn. 1999). The Defendant testified that she gave Ms. Reppert a loan for $70 and that she received an iPod, not an iPad, as collateral for the loan. [The Defendant] admitted she did not have a license to operate a pawn shop.

During cross-examination of the Defendant, the Defendant was asked if she had been charged or convicted of theft in Dickson County, Tennessee. She denied both. The Defendant was also questioned about text messages she had sent a boyfriend saying she was going to take her car from a repair shop without paying for it. The Defendant denied this and denied that her car had been at a repair shop. After being confronted with a police report showing she had been charged with theft, the Defendant continued to deny that she had been charged with theft. The defense objected to the police report being admitted into evidence and that objection was sustained.

The State then suggested that the Defendant be advised of her constitutional rights against self-incrimination. The Court at that time advised the Defendant of her rights against self-incrimination under the Fifth Amendment to the United States Constitution and Article I, section 9 of the Tennessee Constitution. After the Court[']s advisement to the Defendant,

defense counsel requested a brief recess to talk with the Defendant. After a recess, the Defendant was asked if she wished to change her testimony in any way. The Defendant stated that she did not. The Defendant was asked if she understood that if she was found not to be truthful that she could be charged with perjury, which she acknowledged and stated she was telling the truth and had not stolen anything. After the Defendant's testimony, the Defendant rested her case and the case was sent to the jury for consideration.

The jury found the Defendant guilty in Count One of Docket Number 13003 of a violation of T.C.A. § 45-6-205, Failure to Have a License to Operate a Pawn Shop. She was found not guilty of Count Two. The Defendant was sentenced to eleven months and twenty-nine days in the Humphreys County, Tennessee jail, with the sentence suspended to probation. The Defendant was also ordered to pay the costs.

The Defendant filed a timely notice of appeal, and this case is now properly before this Court for review.

## ANALYSIS

**Absence of Court Reporter.** The Defendant was tried for misdemeanor offenses, and the record on appeal shows that she was declared indigent and appointed counsel before trial. See Tenn. Code Ann. §§ 40-14-307(a) (providing that a court reporter "shall attend every stage of each criminal case before the court"); 40-14-301(3) (defining "criminal case" in pertinent part as "the trial of any criminal offense which is punishable by confinement in the state penitentiary"); State v. Nail, 963 S.W.2d 761, 764 (Tenn. Crim. App. 1997). Under these circumstances, the Defendant contends that the trial court "erred and deprived [her] of her due process rights by failing to provide a court reporter during trial." She specifically argues that the State's failure to provide a court reporter disadvantaged her right to appeal because it created an inadequate record of the proceedings, and she disputed the statement of the evidence accepted by the trial court. In response, the State contends that the Defendant was not entitled to a verbatim transcript of the trial because she was convicted of a misdemeanor, that this issue is waived because trial counsel failed to request a court reporter to transcribe the proceedings during trial, and that the Defendant has failed to establish plain error. Upon our review, we conclude that the Defendant is not entitled to relief.

This court has previously held that "[a]s a matter of equal protection, indigent defendants must be afforded with 'the basic tools of an adequate defense or appeal, when such tools are available for a price to other defendants.'" State v. Gallagher, 738 S.W.2d

624, 625 (Tenn. 1987) (citing Britt v. North Carolina, 404 U.S. 226, 227 (1971); State v. Elliott, 524 S.W.2d 473, 475 (Tenn. 1975)). The distinction between felony and misdemeanor cases "is not a valid constitutional basis for denial of such tools." Id. (citing Mayer v. City of Chicago, 404 U.S. 189, 195-96 (1971)). The State must provide an indigent defendant with a "'record of sufficient completeness' to permit proper consideration of [his] claims." Draper v. Washington, 372 U.S. 487, 499 (1963) (quoting Coppedge v. United States, 369 U.S. 438, 446 (1962)). "A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript." Mayer, 404 U.S. at 194; see Gallagher, 738 S.W.2d at 625. Rather, "alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." Draper, 372 U.S. at 495; see Gallagher, 738 S.W.2d at 625. In other words, a trial court's failure to provide a court reporter in order to supply a verbatim transcript does not create automatic reversible error. Mayer, 404 U.S. at 194; see also State v. Hammond, 638 S.W.2d 433, 434 (Tenn. Crim. App. 1982) (citing State v. Bomar, 213 Tenn. 499, 376 S.W.2d 451 (1964); Beadle v. State, 203 Tenn. 97, 310 S.W.2d 157 (1958)).

Where there is no verbatim transcript, as in this case, this court has held that compliance with Rule 24 of the Tennessee Rules of Appellate Procedure provides an alternative method for reporting trial proceedings to facilitate appellate review. Gallagher, 738 S.W.2d at 626; Hammond, 638 S.W.2d at 434. Rule 24(c) provides for the filing of a statement of the evidence when a transcript of the evidence is unavailable. In such situations, "the appellant shall prepare a statement of the evidence or proceedings from the best available means, including the appellant's recollection." Tenn. R. App. P. 24(c). "The statement should convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal." Id. An appellee may object to the statement as filed, and any differences regarding the accuracy of the statement shall be settled by the trial court. Tenn. R. App. P. 24(c), (e). "Absent extraordinary circumstances, the determination of the trial court is conclusive." Tenn. R. App. P. 24(e).

Based on the above authority, we conclude that the Defendant is not entitled to relief. Trial counsel did not request a court reporter to be present at the Defendant's trial and, as argued by the State, this issue is technically waived. See Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").

Although the Defendant argues that she cannot waive the presence of a court reporter because it is "outside the scope or requirements of the statute," we disagree. If the Defendant's argument holds true, then indigent defendants charged with

misdemeanors may proceed to trial without objecting to the absence of a court reporter in hopes of obtaining an acquittal but will be assured of a new trial if found guilty. We do not believe this to be prudent and cannot condone such an outcome. While we are troubled by trial counsel's failure to request a court reporter, coupled with the numerous complaints of ineffective assistance, the record simply does not establish a denial of due process. See, e.g., State v. Jason Peter Meeks, No. M2011-01134-CCA-R3-CD, 2012 WL 3085563, at *2-3 (Tenn. Crim. App. July 31, 2012)(collection of cases holding that a misdemeanor defendant has no right under Tennessee law to a verbatim transcript of the proceedings in the trial court). In addition, we recognize that there were contested statements of evidence. However, new counsel was given the opportunity to submit a statement of the evidence from the Defendant's perspective. Statements from the parties were reviewed by the trial court, and the statement of evidence submitted by the State was deemed the most accurate and adopted by the trial court. Because the trial court complied with the procedure mandated by Rule 24, we conclude that the statement of the evidence approved by the trial court constitutes "an equivalent report of the events at trial from which [the Defendant's] contentions arise." Mayer, 404 U.S. at 194; State v. Gregory Eidson, No. M2017-01808-CCA-R3-CD, 2018 WL 4944544, at *2-3 (Tenn. Crim. App. Oct. 12, 2018), perm. appeal denied (Mar. 27, 2019). The Defendant is not entitled to relief.

**Sufficiency of the Evidence.** Based on the "less than adequate" record, the Defendant contends that a reasonable trier of fact would not find the requisite elements of operating a pawnshop without a license. She specifically argues that the victim was desperate and needed money, that the Defendant was merely providing her a loan for which she wanted collateral, and that there was no proof that the pawn shop, the "Happy Hour Swap Shop," was operational. In response, the State contends that the evidence supports the Defendant's conviction. Upon applying the following well-established law, we agree with the State.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be

drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, and the inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

Pawnbrokers conducting business in Tennessee are subject to licensure and regulation under the Tennessee Pawnbrokers Act of 1988 (Pawnbrokers Act). See Tenn. Code Ann. §§ 45-6-201 to -224. A "pawnbroker," as relevant in this case, means "any person, partnership or corporation . . . engaged in the business of advancing money to a customer in consideration for the customer surrendering possession of tangible personal property on an agreement by which the property may be returned to the customer's possession on repayment of the money advanced[.]" Id. at § 45-6-203. To lawfully act as a pawnbroker, a person, business, or corporation must first obtain a license from the county clerk in the county in which he or she is conducting business. See Tenn. Code Ann. §§ 45-6-205 to -208. A "pawnshop" is the location at which the pawnbroker regularly conducts business, id. at § 45-6-203. A person who knowingly violates any of the provisions of the Pawnbrokers Act, upon conviction, commits a Class A misdemeanor, id. at §45-6-218.

Viewed in the light most favorable to the State, the evidence presented at trial established that the Defendant acted as a pawnbroker without a license in violation of the Pawnbrokers Act. Reppert testified that the Defendant owned and operated a business known as Happy Hour Swap Shop in McEwen, Tennessee. On July 27, 2012, Reppert went to the Happy Hour Swap Shop and pawned an iPad for $70, with the agreement that Reppert could buy it back from the Defendant for $90, once she got paid. When Reppert

returned to the Happy Hour Swap Shop a couple of weeks later, no one was there. Reppert called the Defendant at least four times, attempting to get her property back. A receipt for the transaction and a business card were admitted as a collective exhibit at trial. Significantly, the receipt was made out to Reppert and stated "Swap Pawn on pod for one month $70.00" "Buy Back $90.00 8/27/12[.]" In handwriting at the top of the receipt appeared, "Happy Hour Swap Shop 931-446-4045." The business card was entitled "Happy Hour Swap Shop" with the words "Buy Sell Trade Pawn Rent" on it, along with a phone number and the names "Liz & Rick Schmitz." An investigator with the district attorney's office testified that the local clerk's office had no record of the Defendant having procured a license to operate a pawnbroker's business during the relevant time period. Although the Defendant insisted that she only "loaned" Reppert $70, for which she accepted an iPod as collateral, the jury rejected her testimony as was its prerogative. The Defendant is not entitled to relief.

## CONCLUSION

For the above reasons, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, JUDGE