(No. 31691.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* THOMAS SHEEHAN, Plaintiff in Error.

*Opinion filed November 27, 1950—Rehearing denied Jan. 15, 1951.*

546

WILLIAM L. CARLIN, and LOUIS A. ROSENTHAL, both of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and JOHN S. BOYLE, State's Attorney, of Chicago, (JOHN T. GALLAGHER, RUDOLPH L. JANEGA, ARTHUR F. MANNING, LEO F. POCH, and ROBERT J. McDONNELL, all of Chicago, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

By an indictment returned in the criminal court of Cook County, Thomas Sheehan and James Sorrentino were charged with robbing Alex Ordman of a truck and forty-nine dollars, belonging to the Chicago Tribune Company, while armed with a blackjack and a knife. The second count of the indictment charged plain robbery. Upon the trial, where each defendant was represented by counsel of

his own choice, Sorrentino changed his original plea of not guilty and entered a plea of guilty. Sheehan continued to plead not guilty but, as his attorney explained to the court, it was a technical plea and he was willing to stipulate the facts and to waive a jury. The court found Sorrentino guilty on his plea and Sheehan guilty on the evidence. Motions for probation were denied, as was also Sheehan's motion for a new trial. Sheehan, eighteen years of age, was sentenced to imprisonment in the penitentiary for a term of not less than two nor more than four years. Sorrentino, who was fifteen years of age, was sentenced to the reformatory for a like term of years. Sheehan, alone, prosecutes this writ of error.

Sheehan contends that he did not receive a fair trial and that there is a fatal variance between the proof and the finding and judgment. A determination of these issues necessitates a review of the evidence.

Defendants, by their respective attorneys, stipulated that, if Alex Ordman, a truck driver for the Chicago Tribune Company, Samuel Montgomery, a passenger in Ordman's truck, and James Ryan, one of the arresting officers, were called as witnesses, they would testify to the following facts: At 1:00 A.M., March 29, 1950, Ordman stopped at a newsstand to deliver papers. Sorrentino entered the truck, struck both Ordman and Montgomery over the head with a blackjack, and took Ordman's wallet. Sheehan then entered the truck and drove it away. Montgomery was thrown out on the pavement almost immediately, while Ordman was not forced out of the truck until several minutes later. After Ordman reported the robbery, Ryan and other police officers found Montgomery and soon apprehended Sheehan and Sorrentino in the truck. Sheehan surrendered, was identified by Montgomery, and confessed. Sorrentino escaped only to be arrested at his home less than half an hour later. About 2:00 A.M., Sheehan and Sorrentino were both identified by Ordman and Montgom-

ery at a police showup and each admitted having participated in the robbery.

Signed confessions made by both defendants were introduced in evidence without objection. These confessions were made by defendants in the presence of each other and several police officers about seven hours after the robbery. The statements constitute complete confessions and fully corroborate the stipulated facts. Sheehan's confession was detailed to the extent that he named each of the ten streets over which he drove from the time of the robbery to his arrest. According to both statements, defendants met at a hamburger place about midnight and each had several drinks from a bottle of whiskey while walking along the street in the hour before the robbery.

James Bryne, a police officer, testified that he found a blackjack in Ordman's truck and that Sorrentino admitted that it belonged to him and that he had used it in the robbery. Byrne also stated that Sheehan was carrying a set of brass knuckles when arrested. James Fitzgerald, another police officer, testified that Sheehan appeared to be sober when arrested and that his breath did not have an alcoholic odor.

Sheehan and Sorrentino each appeared as a witness in his own behalf. Sorrentino's testimony was primarily directed to matters in mitigation. Sheehan testified that he met Sorrentino in a hamburger place about 7:00 P.M. on the night in question and that, later, they went to a tavern where he had three glasses of beer and four or five "shots" of whiskey. In this he was corroborated by Sorrentino, who added that their original story about drinking whiskey from a bottle just before the robbery was false. According to Sheehan, he was in a daze after leaving the tavern and, although he did not remember entering the truck, he did recall driving but did not know where he was driving or what he was going to do with the truck. Sheehan also testified to the effect that he did not remember making his

signed statement. On the other hand, he stated that he had known Ordman well for seven or eight years and that he used to work for Ordman on his truck.

In support of his contention that he did not receive a fair trial, Sheehan, who is now represented by new counsel, insists (1) that he and his codefendant should have been tried separately; (2) that, being a minor, the stipulation of facts was not binding upon him; (3) that the trial judge was prejudiced and, by inference, (4) that he was not adequately represented by his attorney. Although there is some overlapping, each contention will be considered separately.

Generally, persons jointly indicted should be tried together. (*People* v. *Barbaro,* 395 Ill. 264.) The granting of a separate trial is a matter of judicial discretion and the motion presented must disclose how the defendant would be prejudiced by a joint trial. (*People* v. *Meisenhelter,* 381 Ill. 378.) Defendant did not move for a severance and, even now, is unable to show that he was prejudiced by a joint trial. The only possible sources of prejudice were Sorrentino's testimony and confession. Sorrentino was a competent witness and his confession, having been made in the presence of Sheehan and assented to by him, was admissible in evidence against him. *People* v. *LaCoco,* 406 Ill. 303; *People* v. *Resco,* 388 Ill. 480; *People* v. *Cardinelli,* 297 Ill. 116.

Defendant also contends that he is not bound by the stipulation of facts. In this connection, defendant relies upon decisions in civil cases to the effect that a minor is not bound by a stipulation of facts or an agreed final order entered into by his guardian or attorney. (*Harris* v. *Young,* 298 Ill. 319; *Anderson* v. *Anderson,* 191 Ill. 100; *Quigley* v. *Roberts,* 44 Ill. 503; *Leonard* v. *Chicago Title and Trust Co.* 287 Ill. App. 397.) This rule arises out of the broader principle that a judgment in a civil case cannot be entered against a minor without actual proof of the allegations of

the complaint. (*Quigley* v. *Roberts,* 44 Ill. 503; *Leonard* v. *Chicago Title and Trust Co.* 287 Ill. App. 397.) Like the principle from which it stems, it is not applicable in criminal cases. When a minor above the age of ten years stands charged with a crime, he appears and defends in person or by an attorney the same as an adult, except if under fourteen years of age his capacity must be shown. (*People* v. *Batey,* 392 Ill. 390; *People* v. *Fitzgerald,* 322 Ill. 54.) Just as a minor can be convicted upon a plea of guilty without the production of any proof, so, too, may a minor, being tried upon a plea of not guilty, stipulate as to the facts by his attorney.

In support of the contention that the court was prejudiced, defendant points to the failure of the trial judge to grant a severance on his own motion, his denial of the motion for probation, and his refusal to stay the *mittimus* for more than thirty-four days. The conduct complained of falls far short of showing an abuse of judicial discretion or that the trial judge was prejudiced against defendant.

With regard to the character of his representation in the trial court, as previously indicated, defendant cannot complain that his attorney did not move for a separate trial or object to the admission of Sorrentino's confession. This leaves the stipulation of facts and defendant's own confession. Although defendant attacks the act of his attorney in stipulating as to the facts upon the ground it deprived him of the opportunity to cross-examine witnesses, he is unable to suggest any profitable line of cross-examination or any undisclosed facts which might have benefited him. Furthermore, the stipulation operated to defendant's advantage in that it precluded Ordman and Montgomery from testifying in detail as to the brutality of the assault and the nature and extent of their wounds, and also gave Ordman no opportunity to relate the history of his friendship with defendant. As to his confession, defendant asserts that counsel should have objected to its admission

in evidence upon the ground that he had been intoxicated and did not remember making the statement. Defendant's confession was made more than seven hours after the robbery, in the presence of five or six witnesses, and included the name of every street over which he drove the truck until he was arrested. Moreover, as a witness in his own behalf, defendant did not deny the truth of the substance of his confession and did little more than intimate that he did not remember making a statement. In view of these circumstances, an objection to the introduction of the confession upon the ground of defendant's alleged intoxication would have been futile. From a careful review of the record, it cannot be said that the representation of defendant was incompetent or inadequate.

The only other error assigned is that there is a fatal variance between the proof and the finding and judgment of the court. As variances are limited to differences between the pleadings and the proof, the substance of defendant's contention is that the finding and judgment of the court are not supported by the evidence. The contention made arises out of the fact that, although there is no proof that either defendant was armed with a knife, the judgment order recites, in both the finding and the judgment, that defendant "is guilty of robbery while armed with a dangerous weapon, to wit, a certain knife." Defendant was indicted for robbery while armed with a knife and a blackjack. The proof showed that his confederate, Sorrentino, was armed with a blackjack and, by statute, one guilty of robbery who has a confederate present armed with a dangerous weapon is himself guilty of armed robbery. (Ill. Rev. Stat. 1949, chap. 38, par. 501.) Since a mere finding of guilty is sufficient to sustain a conviction for armed robbery under an indictment charging both plain and armed robbery, (*People* v. *Bailey*, 391 Ill. 149; *People* v. *Giacomino*, 347 Ill. 523,) the reference in the finding and judgment to the specific type of weapon employed may

552

properly be regarded as surplusage. The essential part of the finding and judgment is that the defendant was guilty of armed robbery, and the finding and judgment are fully sustained by the evidence.

The judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*