SUMMERS, Justice.
 

 This is an appeal by Allen Joseph Bourg from a conviction and sentence for pandering as denounced by R.S. 14:84(4), which defines that crime as the intentional “Receiving or accepting by a male as support or maintenance, anything of value which is known to be from the earnings of any female engaged in prostitution * * *
 

 Several questions of law are presented by bills of exceptions reserved below.
 

 Late on the evening of November 16, 1964 four officers, undercover men Jimmy Roberts and Dexter Poore and Detectives Donald Reed and Walter Lightell of the Jefferson Parish Sheriff’s Office Vice Squad, met at a supermarket parking lot. They proceeded to record serial numbers of certain U. S. currency to be used by Officers Poore and Roberts as evidence in connection with a planned investigation into suspected prostitution activity being carried on within the parish. Poore was given-$40 of this currency.
 

 Pursuing this plan Officers Poore and Roberts proceeded to visit various suspected establishments, and in time they entered appellant Bourg’s place of business, the Oasis Bar and Lounge at 427 Barataría Blvd. in Marrero, at approximately 1:20 on the morning of November 17th.
 

 The two officers sat within sight of one another and ordered beer from Bourg who was tending bar. Shortly thereafter Mary Rapp approached Officer Poore and engaged him in conversation. She solicited a drink for herself and coin for the juke box. The talk led to an offer by the Rapp woman to have intercourse with Officer Poore for $50; but Poore has only $42, $40 of which was the identified currency, and that sum was finally agreed upon.
 

 Before accepting the money, however, the Rapp woman obtained Poore’s driver’s license and submitted it to appellant Bourg in order that Poore’s identity might be ascertained, and, presumably, in order that it might be determined whether he was connected with law enforcement. After scanning the driver’s license Bourg returned it to Poore; Poore then paid Mary Rapp ■ $42; and she, in turn, gave the money to Bourg who put in in the cash register.
 
 *851
 
 Both Officers Poore and Roberts observed the details of this transaction.
 

 The Rapp woman and Poore left the bar in her car and went to her apartment at-519 Hamilton Street, where she disrobed- and . got in bed. Poore then arrested her. She was booked at the Jefferson Parish lockup.
 

 ' In the meantime Poore had contacted Detectives Reed and Lightell, and all three of the men returned to the Oasis Bar and Lounge. They were informed by Roberts, who had remained at the bar and observed the actions of Bourg, that, after Poore and the Rapp woman departed, Bourg had taken money from the cash register, walked to the juke box where he opened the cash box, then to a room adjacent to the front door and, thereafter, outside where he opened the trunk of his automobile located approximately 25 feet from the front door.
 

 It was about 2 o’clock in the morning when the officers returned to the Oasis Bar and Lounge. At that time Bourg was arrested. He requested permission to call his attorney but was refused because the officers were in the process of searching the establishment and Bourg’s automobile.
 

 Within an hour after his arrest Bourg’s automobile was searched, and, secreted within the trunk of the car, the officers found $97, $40 of which were the identified bills Poore had passed to the Rapp woman. The Bureau of Identification Squad was then summoned, and they photographed, the hiding place of the money in the trunk, of the car. The scene was also photographed to show the location of Bourg’s car with relation to the entrance.- of the Oasis Bar and Lounge, a distance of about 25 feet.
 

 When the officers discovered the money in the trunk of the car, Bourg, who was nearby, declared in their presence, “You have me for prostitution, but you don’t have me for the other thing,” meaning there was evidence against him relating to the pandering offense, but not for a suspected narcotics violation which the officers were also investigating at the time.
 

 Bourg was taken to the parish jail where he was booked and permitted to use the telephone to call his attorney, which was approximately one and a half hours from the time of his arrest at the bar.
 

 The first bill of exceptions is directed at the refusal of the trial judge to order the district attorney to furnish all of the information requested in an application for a bill of particulars. The district attorney answered the application and volunteered the information requested in the first interrogatory concerning the “day, month and time” of the alleged offense, but refused the particulars requested in eleven other interrogatories because the information requested involved evidence which might be presented at the trial. The trial judge ruled that the answer was sufficient in law
 
 *853
 
 and declined to order the State to further particularize.
 

 The application for particulars requested the serial numbers and denominations of the currency. It sought to ascertain from whom Bourg had obtained knowledge that the money allegedly received by him from Mary Rapp was earned by her as a prostitute; when and where had she been previously convicted as a prostitute; with whom and where had she committed the acts which made her a prostitute, and what had she charged for said acts prior to November 17, 1964; whether she was accused of acts of prostitution on November 17, 1964, and, if so, when, where and with whom, and who paid the charge and how much; if Mary Rapp committed an act of prostitution on November 17, 1964 was the other party a deputy sheriff, an auxiliary deputy or so-called “civilian undercover agent” working for and with monies of the Sheriff’s Office of the Parish of Jefferson; and if the answer to the latter question is yes, did said person engage Mary Rapp in conversation and entice and persuade her into offering to commit an act of prostitution; and, finally, if Mary Rapp committed prostitution on November 17, was sexual intercourse actually committed ?
 

 Defense counsel points out that the bill of information specifically charges Bourg with violation of R.S. 14:84(4) and reiterates the vital elements of the crime when it recites “that he did intentionally receive and accept as
 
 support and maintenance
 
 from one Mary Rapp, a female, the sura of $42.00, which he knew to be from the earnings of Mary Rapp, whom he knew was engaged in
 
 prostitution!’
 
 The bill of information and the statute make it clear,, he asserts, that the accused must receive the money as “support and maintenance’” and the woman from whom he receives it must be engaged in “prostitution,” which involves sexual intercourse. These are, therefore, essential elements of the crime which, defense counsel argues, the State must prove. For this reason he says the accused is entitled to factual particulars concerning these elements of the crime, and, also, to information concerning the denominations of the money and their serial numbers “so that at a later date the Sheriff’s office would not be in a position to provide other monies and claim that they were the monies which had been used and previously identified by the deputies.’”
 

 This first bill is without merit.
 

 The provisions of R.S. 15:235 and R.S. 15:288 and the jurisprudence of this court make it a well-settled proposition that the function of a bill of particulars is to inform the accused concerning matters which are pertinent to the charge against him, which the trial court in its sound discretion considers necessary in fairness to permit the accused to defend himself. The accused, however, is not entitled to the
 
 *855
 
 evidence upon which the State relies to establish its case, for the State is not required to disclose the facts upon which it .relies for a conviction in advance of trial. State v. Barksdale, 247 La. 198, 170 So.2d 374 (1965); State v. Mills, 229 La. 758, 86 So.2d 895 (1956); State v. Mines, 137 La. 489, 68 So. 837 (1915); State v. Clark, 124 La. 965, 50 So. 811 (1909). See also State v. Dickinson, 248 La. 500, 180 So.2d 403 (1965).
 

 What defense counsel sought by his application for particulars was a pretrial revelation of the evidence upon which the State would rely to convict him. In doing so he sought also to determine whether the State was prepared or not to prove certain elements of the crime with which he was charged. He was not entitled to this information as a matter of right, and, in view of the entire adequacy of the bill of information which amply informed him of the nature and cause of the accusation against him,1 he was at no unfair disadvantage in his defense. Under these circumstances this court will not disturb the ruling of the trial judge.
 

 Bills of Exceptions Nos. 2 and 3 involve motions to suppress evidence, which was the $97 in currency, including the $40 passed by Poore to Mary Rapp, found by the officers in the trunk of Bourg’s auto
 
 *857
 
 mobile. It is contended that the search of Bourg’s car was unauthorized, without a search warrant and unreasonable in violation of the Federal and State Constitutions, and the evidence should have been excluded by the trial judge who allowed its introduction at the trial.
 

 Though the State concedes that the search was conducted without a warrant, it takes the position that Bourg consented to the search, or, alternatively, that the search was incident to a valid arrest and, therefore, reasonable; hence, the trial judge was correct in refusing to suppress the evidence. Our decision is based upon the theory that the search was properly conducted as an incident to a valid arrest. This being so, we need not pass upon whether Bourg gave his consent to the search.
 

 The Fourth Amendment to the United States Constitution and Section Seven of Article One of the Louisiana Constitution provide that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated, and no warrant authorizing a search and seizure should be issued but on probable cause.
 

 It is unreasonable searches which are prohibited by those constitutions. United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950).
 

 Of course, a search without warrant incident to an arrest is dependent upon the validity of the arrest.
 

 Likewise, the validity of an arrest without warrant must depend upon compliance with legal standards determined by each state. United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948). In this state any peace officer may, without a warrant, arrest a person when he has reasonable cause to believe that a felony has been committed and reasonable cause to believe that such person has committed it; and, quite obviously, he may arrest when a felony or misdemeanor is committed in his presence. R.S. 15 :60.
 

 Existence of the grounds for the arrest, if made on reasonable cause or if made for a felony or misdemeanor committed in the presence of the officer, is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case. The same is true concerning whether the search and seizure are reasonable. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963).
 

 What is reasonable is to be determined by the facts of the particular case and the practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. Cf. Brinegar v. United States, 338 U.S. 160, 69 S. Ct. 1302, 93 L.Ed. 1879 (1949).
 

 
 *855
 
 I. “THE STATE OF LOUISIANA) [S'STwenty-Fourth Judicial District J
 

 Parish of Jefferson TWENTY-FOURTH JUDICIAL DISTRICT COURT
 

 “FRANK H. LANGRIDGE, District Attorney, of the Twenty-Fourth Judicial District of the State of Louisiana, who, in the name and by the authority of the said State, prosecutes in its behalf, in proper person comes into the Twenty-Fourth Judicial District Court of the State of Louisiana, in and for the PARISH OF JEFFERSON and gives the said Court here to understand and be informed that one ALLEN JOSEPH BOURG. a male, late of the Parish aforesaid, on or about the I7th day of NOVEMBER in the year of our Lord One Thousand Nine Hundred and SIXTY FOUR (1964) with force and arms, in the Parish aforesaid, and within the jurisdiction of the Twenty-Fourth Judicial District Court of Louisiana, in and for the Parish aforesaid, then and there being did wilfully and unlawfuliy commit the crime of Pandering as defined in R.S. 14:84, paragraph 4, in that he did intentionally receive and accept as support and maintenance from one Mary Rapp, a female, the sum of $42.00, which he Imew to be from the earnings of the said Mary Rapp, whom he knew was engaged in prostitution, contrary to the form of the Statute of the State of Louisiana, in such case made and provided, and against the peace and dignity of the State.
 

 (Signed) Thomas P. McGee Asst. District Attorney of the Twenty-Fourth Judicial District”
 

 
 *859
 
 Little doubt exists that the arrest was valid here. Not only was there reasonable cause to believe that a felony was being committed, the crime of pandering was essentially committed by Bourg in the presence of undercover men Poore and Roberts. Actually, no argument is advanced that the arrest was unlawful. The gravamen of Bourg’s contentions is that even though the arrest took place within the Oasis Bar and the search within that building was probably lawful, but unavailing, the extension of the search outside that building to the automobile, brought it beyond the immediate vicinity of the arrest; and Bourg argues that this extension was the unreasonable and unlawful phase of the search. He relies upon James v. State of Louisiana, 382 U.S. 36, 86 S.Ct. 151, 15 L. Ed.2d 30 (1965); Stoner v. State of California, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed. 2d 856 (1964) and United States v. DiRe, 332 U.S. 581, 68 S.Ct. 222 (1948).
 

 In James v. State of Louisiana the search and seizure were made more than two blocks from the site of the arrest; the dwelling of James being the object of the search. It was the opinion of the Federal Supreme Court that the search of James’ home could not be regarded as incident to his arrest.
 

 A clearer and more convincing case is presented in Stoner v. California where the officers searched the hotel room rented by the accused whom they arrested two days later in another state. That search was held to be completely unrelated to the arrest, both as to time and as to place.
 

 The DiRe case presents a situation in which it was found that the arrest was unlawful. For that reason the case is distinguishable from the case before us.
 

 We are not pursuaded that these cases furnish a binding precedent for the case at bar.
 

 A search, it has been said, can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. Agnello v. United States, 269 U. S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925).
 
 [2]
 

 Such a test is satisfied in the case before us. The evidence was discovered in the trunk of the car within an hour after the arrest in the Oasis Bar. Search of the-car was simply a continuation of the search begun just within the door of the lounge in the places Officer Roberts observed Bourg after Poore and the Rapp woman departed. It was apparent that Bourg was secreting the money and the automobile was one of
 
 *861
 
 four places where the identifiable currency had to be located. These activities were intimately connected in time and place with the automobile of Bourg, which was under his immediate control, and the search was nothing less than reasonable conduct of prudent officers under the circumstances.
 

 Moreover, the automobile wherein the money was secreted could have been used to transport the evidence beyond the reach of the law. Faced with this prospect the need for prompt action by the arresting officers made obtaining a search warrant impracticable if they were to prevent destruction of the evidence. It is just such a circumstance which the law contemplates when it permits a search as an incident to a lawful arrest. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914); People v. Chiagles, 237 N.Y. 193, 142 N.E. 583, 32 A.L.R. 676 (1923); Macy, Search and Seizure Incident to Lawful Arrest, 10 La.L.Rev. 546 (1950).
 

 Bills of Exceptions Nos. 4 and 6 were reserved when the trial court refused a special charge requested by the defendant. This special charge was so worded that by its terms the State would be required to prove an act of sexual intercourse to satisfy a prosecution for pandering. When the general charge was given and did not require that proof, an objection was made and a bill reserved to the court’s refusal to modify its general charge.
 

 By the language of R.S. 14:82 prostitution is defined as “the practice” by a female of indiscriminate sexual intercourse. R.S. 84(4), in defining pandering, refers to a' female “engaged” in prostitution. These articles denounce the practice of prostitution. Neither article requires proof of a specific act of sexual intercourse as defendant contends. Thus, offering of one’s self for intercourse for hire is the practice of prostitution. And it is not necessary to prove that. the woman offered herself or had intercourse with more than one man to prove that her conduct was indiscriminate. . The quality of “indiscriminate” is not to be determined, by the number of incidents, but by the circumstances, surrounding the woman’s conduct. Wharton’s Criminal Law and Procedure, Vol. II, p. 582, sec. 758. Cf. State v. Davis, 158 La. 21, 103 So. 391 (1925), where it was held that sexual intercourse with the abducted person need not be shown, although proof of such intercourse would be admissible to show intent.
 

 Although • defense counsel argues extensively that there must be a showing under the language of R.S. 14:84(4) that the money received was used for Bourg’s “support and maintenance”, we cannot ascertain in what manner this question has been raised, except by inference it may be said that it was defendant’s intention to raise it when he objected to the general charge which did not instruct the jury to
 
 *863
 
 that effect. But he did not point out wherein he found the general charge objectionable, except to say that his objection pertained to “the portion on prostitution, pimping and pandering.” Such an objection is too vague and indefinite to support a bill of exceptions, and defendant is not entitled to such a favorable inference.
 

 In his opening statement to, the jury the district attorney declared that a deputy would testify that at the time of his arrest the accused stated, “You got me for prostitution, but not for the other thing.” The defense objected to the quoting of this incriminating statement. The objection was overruled and Bill of Exceptions No. 5 was reserved.
 

 Thereafter, during the trial, the court permitted testimony establishing that the defendant made the quoted inculpatory statement in the presence of the officers at the time when the money was discovered in the trunk of defendant’s automobile. Defendant objected to this testimony, the objection was overruled and Bill of Exception No. 7 was reserved.
 

 Both of these bills of exceptions are based upon the argument that the inculpatory statement was made while defendant was under arrest and without the benefit of counsel, though he had requested counsel prior to making the statement. The defense relies on Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) to-sustain its position.
 

 A study of the Escobedo case convinces us that it is not controlling here. The evidence or inculpatory admissions which the Escobedo case reprobates are those obtained by the police when they begin to “carry out a process of interrogations that lends itself to eliciting incriminating statements.” Thus, the right to counsel attaches when the law enforcement process focuses on the accused “and its purpose is to elicit a confession * * *
 

 These circumstances are not present in the case at bar. Here the police were making a search for physical evidence, and the defendant was not being interrogated in any wise. It was the discovery of the money in the trunk of his car which provoked the impulsive, spontaneous and voluntary statement of the accused. Therefore, introduction of the statement was proper.
 

 Bill of Exceptions No. 8 was reserved to the court’s ruling denying a motion in arrest of judgment. In the motion it is declared that R.S. 14:84(4) is unconstitutionally vague and indefinite in that it does not define the meaning of the expression “support and maintenance.”
 

 'The words “support and maintenance” as used in the statute are synonymous and have a definite meaning which persons of ordinary intelligence may easily understand. We find this bill to be without merit. State v. Wiener, 245 La. 889, 161 So.2d 755 (1964) and cases cited there.
 

 
 *865
 
 Bill of Exceptions No. 9 was reserved to the refusal to grant a motion for a new trial. It is based on the other bills we have found to be without merit.
 

 The conviction and sentence are affirmed.
 

 [2]
 

 . “The right without a search warrant contemporaneously to search persons lawfully arrested while committing crimes and to search the place where the arrest is made in order to find and seize things connected with the crime as its fruits or as the means by which it was committed, as well as weapons and other things to effect an escape from custody is not to be doubted.”