206 So.2d 503 (1968)
251 La. 810
STATE of Louisiana
v.
Ralph PAGE.
No. 48329.
Supreme Court of Louisiana.
January 15, 1968.
Rehearing Denied February 19, 1968.
*505 Nils R. Douglas, Lolis E. Elie, New Orleans, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellant.
SANDERS, Justice.
The Orleans Parish Grand Jury jointly indicted Ralph Page and Patrick Gardiner, Jr. for the murder of James Bennet. After trial, the jury returned a verdict of guilty without capital punishment as to Gardiner, and the court sentenced him to life imprisonment. The jury found Page guilty as charged, and the court sentenced him to death. Defendant Page has appealed, relying upon six Bills of Exceptions.
The background facts are these: On the night of November 24, 1964, two intruders broke into the apartment of James Bennet, an aged Negro, at 910 North Robertson Street in New Orleans. Finding Bennet in bed, one of the intruders struck him on the head several times, rendering him unconscious. The intruders then ransacked the apartment, taking a gun, a radio, and an electric iron.
Bennet died two days later, without regaining consciousness.
Investigating officers found the identified electric iron in a search of the residence of Leroy Page, brother of the defendant. They found a pair of gloves, alleged to have been worn by Page in the commission of the crime, at defendant Gardiner's residence.
During the investigation, Gardiner made oral and written confessions implicating Ralph Page, and Page himself made an oral confession.
The trial judge denied Page's motion for severance. It also denied his motion to suppress the physical evidence and confessions. Over defendant's objection, the judge admitted the confessions at the trial, but instructed the jury in the general charge that each confession was to be used as evidence only against the defendant who made it, not against his co-defendant.

Bill of Exceptions No. 2: Motion for Severance.
Page reserved Bill of Exceptions No. 2 to the trial court's denial of his motion for severance. The motion for severance alleged that defendant should be tried separately for two reasons: (1) Gardiner made a confession outside the presence of the mover charging him with the crime of murder; and (2) the defenses of the defendants are antagonistic in that Ralph Page denies committing the crime.
*506 The record reflects Gardiner made written statements reciting he and Ralph Page had gone to Bennet's apartment on November 24, 1964, to take money from Bennet, that Page broke open the door, struck Bennet several times, and took a radio and an electric iron.
At the request of the police officers, Gardiner repeated his confession in the presence of defendant Page. After hearing the confession, Page said, "I did it." At the same time, he also chided Gardiner for disclosing the incriminating facts to the officers.
Former LSA-R.S. 15:316, in effect at the time of the motion for severance, provides:
"Persons jointly indicted shall be jointly tried, unless the district attorney elect[s] to place such persons separately upon trial, or unless the court, upon motion of defendant, shall, after a hearing contradictorily with the district attorney, order a severance."[1]
Under this article we have stated many times that the granting of a severance rests within the sound discretion of the trial judge, and his ruling will not be disturbed on appeal in the absence of a clear abuse of that discretion. See State v. Mack, 243 La. 369, 144 So.2d 363, cert. denied 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416; State v. Progue, 243 La. 337, 144 So.2d 352; and State v. Faciane, 233 La. 1028, 99 So.2d 333.
Defendant Page contends the Gardiner confessions implicating him were admissible only as to Gardiner; hence, a separate trial should have been granted to shield him from prejudice.
The contention is faulty. The State concedes that generally the confession of one conspirator made after arrest can be used only against the party making it. But a well-recognized exception applies to the present case. The confession of a defendant made after arrest out of the presence of a co-defendant but which is verbally assented to by the co-defendant after being repeated in his presence is admissible against both defendants. By voluntarily admitting its truth, the co-defendant effectually adopts the confession as his own. See State v. Murphy, 154 La. 190, 97 So. 397; People v. Hanley, 317 Ill. 39, 147 N.E. 400; Trimble v. State, Fla.App., 143 So.2d 331; Graham v. State, 111 Ga.App. 542, 142 S.E.2d 287; State v. Swiger, 5 Ohio St.2d 151, 214 N.E.2d 417, cert, denied 385 U.S. 874, 87 S.Ct. 148, 17 L.Ed.2d 101; 2 Underhill's Criminal Evidence, § 395, p. 1009 (5th Ed.1956); 22A C.J.S. Criminal Law § 769, p. 1159; 29 Am.Jur.2d, Evidence, § 539, pp. 590-591.
Since the confession was admissible against defendant Page, his plea for a separate trial because of the proposed use of the confession must fail. The confession would have also been admissible against him at a separate trial. See State v. Lamotte, 168 La. 837, 123 So. 591; People v. Sheehan, 407 Ill. 545, 95 N.E.2d 878; Taylor v. State, 191 Tenn. 670, 235 S.W.2d 818, cert. denied 340 U.S. 918, 71 S.Ct. 350, 95 L.Ed. 663; and 23 C.J.S. Criminal Law § 935, p. 718.
Having concluded the confession was admissible against both defendants, we do not reach the question of whether a severance should have been granted if the confession had been admissible only against one of them nor the effect of the judge's instruction in the general charge to the jury that a confession should be used as evidence only against the defendant who made it.
We find no support for the allegation of antagonistic defenses. In their statements to the police both defendants admitted participation in an aggravated burglary, during which Bennet was fatally *507 beaten. The statements identified Page as the one who struck the blows. But, assuming that the statements were in conflict as to which defendant actually struck the deceased, no severance was required. State v. Mack, supra, and State v. Progue, supra.
In State v. Progue, we stated:
"As might be expected there were several minor and insignificant discrepancies in the separately given statements. But only one major discrepancy was contained therein, it concerning which of the three accused struck the fatal blows. * * * Nevertheless, this attempt to shift blame could not and did not (of itself) suggest antagonistic defenses, because under the murder-felony doctrine it is immaterial which of the accused actually administered the beating. Since the three were together in the perpetration of the robbery each was chargeable as a principal, regardless of whether he dealt the specific blows which caused the death."
We conclude the Bill of Exceptions is without merit.

Bill of Exceptions No. 4: The Motion to Suppress the Physical Evidence.
Defendant reserved Bill of Exceptions No. 4 to the overruling of a motion to suppress the physical evidence. This motion was filed prior to the 1966 Code of Criminal Procedure, when the statutory law contained no specific provision regulating the motion to suppress. See State v. Rasheed, 248 La. 309, 178 So.2d 261, cert, denied 384 U.S. 1012, 86 S.Ct. 1962, 16 L.Ed.2d 1031 and State v. Davidson, 248 La. 161, 177 So.2d 273. Compare Art. 703, C.Cr.P. (1966).
Although the motion is couched in general language, apparently defendant complains that the electric iron and pair of gloves were obtained by the police in unconstitutional searches and seizures.
The police obtained the electric iron in a search of the residence of Leroy Page, not a defendant in this case. The officers made the search under a written permission to search signed by Leroy Page. Uncontradicted testimony shows that Leroy Page voluntarily signed it after the officers explained it to him.
Defendant Ralph Page neither resided at the address nor was he present at the time of the search for the stolen property. Since his privacy was not violated, the search infringed none of his constitutional rights. Hence, in our opinion, he has no standing to attack the search and seizure or suppress the evidence. Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697; 22 A C.J.S. Criminal Law § 657(9) (29), pp. 603-604, 632-635. Moreover, we find no constitutional infirmity in the search. The officers acted under a valid waiver by the resident concerned.
The police officers obtained the gloves in a search of co-defendant Gardiner's residence. Prior to the search, Gardiner gave the officers written permission and accompanied them on the search. Gardiner opened the apartment door with his key, removed the gloves from a drawer, and handed them to the officers.
When the State relies upon consent to sustain a search, the State has the burden of showing by clear and convincing evidence that the consent was freely and voluntarily given. State v. Andrus, 250 La. 765, 199 So.2d 867; State v. Pennington, 244 La. 650, 153 So.2d 876.
The State has satisfied that burden in the present case. It established an intelligent waiver. Not only did Gardiner voluntarily give written permission to search, but also opened the door, secured the gloves, and handed them to the officers.

*508 Bills of Exceptions Nos. 5, 6, 7: Admission of Confessions.

The defendant reserved Bill of Exceptions No. 5 after the trial judge overruled a motion to suppress his confession and that of his co-defendant, Gardiner. He reserved additional Bills when the trial judge admitted these confessions in evidence. The defendant asserts the confessions were involuntary: that the police officers induced him to make his oral confession by a promise of leniency to his brother, at whose residence the electric iron was found, and that the officers obtained Gardiner's confession by the use of physical violence. The defendant also contends that in obtaining the confessions, the officers violated the constitutional safeguards announced by the United States Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.
The circumstances surrounding the confessions and statements are these: On December 4, 1964, about ten days after the crime, two city detectives went to Gardiner's home, after having received information that he had been seen near the scene at the time of the crime. The officers informed Gardiner that they wanted to talk to him about Bennet's death. They asked Gardiner and his grandmother to accompany them to the homicide office. Gardiner consented, but at Gardiner's suggestion his grandmother remained at home. The officers informed him that someone had seen him near the scene of the crime and that he could make a statement or remain silent if he preferred to do so. Gardiner then told the officers he had accompanied Page to Bennet's apartment, that he entered after Page had broken down the door, that Page admitted to him he had struck Bennet, and that he had seen Page take a radio, electric iron, and gun from the apartment. Gardiner completed a written statement about 7:40 p. m.
Police officers arrested Ralph Page about 8:40 p. m. At the time of arrest, the officers informed him the crime was the murder of Bennet. Page replied he would not say anything and complained that he would talk to his lawyer. The arresting officers then advised him he did not have to say anything and that he should indeed call his lawyer, because he was being booked for murder.
About 9:30 p. m., after Page had been booked, the officers requested Gardiner to repeat his confession in Page's presence. After Gardiner had done so, one of the officers asked Page, "Well, what about it?" Page replied, "I did it. * * *"
As we have already observed, Page in this colloquy effectually adopted the confession as his own. We assume, without deciding, that he has a right to urge constitutional infirmities in Gardiner's confession, as well as those in his own verbal statement.
The record refutes Page's complaint that he was induced to make the oral confession by a promise of leniency to his brother. It also refutes Gardiner's testimony that the police obtained his confession by beating him. The evidence supports the trial judge's finding the confessions were voluntary. The State has borne its burden of proof.
The trial of the present case began on June 22, 1965. Hence, the holding of Miranda v. State of Arizona is unavailable to defendant. See State v. Evans, 249 La. 861, 192 So.2d 103 and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. However, the prior decision in Escobedo v. State of Illinois is available to him.
As pointed out in Johnson v. State of New Jersey, supra, the precise holding of Escobedo is that statements obtained by police during interrogation may not *509 be used against the defendant at a criminal trial:
"[W]here * * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *."
See also State v. Johnson, 249 La. 950, 192 So.2d 135, cert. denied 388 U. S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374, and State v. Bourg, 248 La. 844, 182 So.2d 510, cert. denied 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93.
The trial judge found no violation of the constitutional safeguards announced in Escobedo. The record reflects the officers warned both defendants of their right to remain silent. They also advised Page of his right to consult an attorney. Neither defendant requested to contact an attorney. Hence, the record fully supports the finding of the trial judge.
We conclude the trial judge properly admitted the confessions, and the Bills of Exceptions lack merit.

Bill of Exceptions No. 1: Overruling Motion for a New Trial.
Bill of Exceptions No. 1 was reserved to the overruling of the motion for a new trial. The Bill recites:
"There is no evidence to substantiate the physical condition of the deceased at the time of the entrance of the accused on to the premises and conclusions drawn as to this by the Jury are erroneous and contrary to the law as being inconclusive and contrary to the evidence. Also, the evidence presented at the trial was insufficient to substantiate that the death was caused by a blow alleged to have been committed by the defendant and unseen by any witness."
This Court reviews only questions of law in criminal cases. Art. VII, Sec. 10, Louisiana Const. A defendant raises a question of law when he alleges the complete absence of evidence as to a specified element of the crime in his motion for a new trial and makes the entire transcript of testimony part of his Bill of Exceptions. See State v. Cade, 244 La. 534, 153 So.2d 382 and State v. McLean, 216 La. 270, 44 So.2d 698. When there is some evidence of the elements of the crime, only an unreviewable factual question is raised. This Court cannot review the sufficiency of the evidence. See State v. Abadie, 247 La. 1043, 175 So.2d 825; State v. Gatlin, 241 La. 321, 129 So.2d 4; and State v. McDonell, 208 La. 602, 23 So.2d 230.
The Bill of Exceptions indicates the defendant attacks the causal relation between the blows and death. The record contains substantial evidence from which the jury could find that the blows struck by defendant caused the death of James Bennet. This includes the testimony of Dr. Lloyd Locascio, Assistant Coroner, who performed an autopsy. Since there is some evidence the blows caused death, as well as some evidence of other elements of the offense, the record satisfies all requirements of appellate review.
For the reasons assigned, the conviction and sentence are affirmed.
NOTES
[1] Compare Art. 704, C.Cr.P. (1966).