Patrick **GARDINER**
v.
C. Murray **HENDERSON**, Warden.
Misc. No. 1031.

United States District Court
E. D. Louisiana,
Baton Rouge Division.
Aug. 21, 1969.

which disappeared upon washing his mouth. (Tr. p. 49)

Patrick Gardiner, in pro. per.

Jack P. F. Gremillion, Atty. Gen., State of Louisiana, Jack E. Yelverton, Asst. Atty. Gen., State of Louisiana, Jim Garrison, Dist. Atty., Parish of Orleans, Louise S. Korns, Asst. Dist. Atty., Parish of Orleans, for respondent.

WEST, Chief Judge:

Petitioner, Patrick Gardiner, is presently serving a life sentence at Louisiana State Penitentiary for the murder of one James Bennet. He petitions this Court for a writ of habeas corpus alleging as his grounds therefor that his constitutional rights were violated in that he was coerced into signing a confession and that he was not advised of his right to counsel. Since these same claims of constitutional violations were made by petitioner both at his trial, and later in his petition to the State Court for a writ of habeas corpus, and since a very complete record of the hearings before those State Courts is available, this Court, rather than hold an evidentiary hearing, ordered the transcript of the State Court proceedings deposited with this record for review. Now, after a thorough independent review of the three volume transcript, this Court concludes first, that petitioner has had an exceptionally thorough hearing on his complaints by the State Courts, and secondly, the conclusion reached by the State Courts that petitioner's constitutional rights have not been violated is eminently correct.

On the night of November 24, 1964, two intruders broke into the apartment of James Bennet, an aged negro, at 910 North Robertson Street, in New Orleans, Louisiana. Bennet was struck several times on the head and was rendered unconscious. Two days later he died. The apartment was ransacked and several items were stolen, including a gun, a radio, and an electric iron. The police investigation led to one Ralph Page and to petitioner, both of whom were ultimately charged with murder. Page was found guilty as charged and sentenced to death, and petitioner Gardiner was found guilty without capital punishment and sentenced to life imprisonment. During the course of the trial certain statements allegedly made by Gardiner were introduced as evidence and used against him, and since the statements were also allegedly repeated by Gardiner in the presence of Page, who did not refute the statements and who thereafter allegedly made an oral confession, the statements were also used against Page. Gardner's statements largely placed the blame for the murder upon Page. At the trial, Gardiner, for the first time, claimed that his statements were not voluntarily given but that instead he was beaten several times by Sgt. Richard Martin, one of the arresting officers, and it was only because of a threat of additional beatings that he finally signed a confession. When this contention was made for the first time during the trial, the Court, in accordance with the requirements of Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), held a hearing out of the presence of the jury, to make an independent, judicial determination as to the voluntariness of the statements in question. Upon examination of the State Court record, I do not believe I have ever reviewed a more thorough, extensive

hearing held by any Court than was held in this case to determine whether or not the statements in question were voluntarily given. One hundred and seventy-seven pages of the transcript are devoted entirely to this question. All of the police officers involved were called to testify, as were petitioner and his co-defendant Page. The Trial Judge allowed extensive and prolonged questioning of each of these witnesses, and finally, after exhibiting extreme patience and leniency, resolved the question of voluntariness adversely to petitioner. I agree with his conclusion, and further conclude that additional evidentiary hearings could add nothing to this already complete record. Indeed petitioner does not represent that he could produce any new evidence to this Court but instead merely avers that the State Court conclusions were wrong. After a complete and thorough review of this record I believe the facts to be as follows:

James Bennet was assaulted on the night of November 24, 1964. He died two days later. On December 4, 1964, the police investigation led them to the home of petitioner's grandmother. The police went to the door and knocked and when petitioner's grandmother answered, they identified themselves and asked for petitioner, Patrick Gardiner. His grandmother called him and he came to the door and was told by the officers that they wanted to talk with him about the Bennet murder and asked him to go to headquarters with them. He voluntarily agreed to go, and when his grandmother was told by the police officers that she could go also, he advised her not to go. Petitioner was placed alone in the back seat of the police car and was not handcuffed. Sgt. Martin and Detective Eugene Fields were on the front seat of the car. On the way to the police station petitioner was told he was a suspect in the Bennet murder case. After arriving at the homicide office, he was told that the police had a witness who could place him at the scene of the crime. He was advised that he did not have to make any statement whatsoever, but that he could make a statement if he wished. He then gave an oral statement in which he largely placed the blame for the murder on Ralph Page. After giving the oral statement, his statement, partly in narrative form and partly in question and answer form, was reduced to writing and signed by petitioner. Thereafter he and his co-defendant Page were brought into the same room, and petitioner, in the presence of Page, repeated his statement orally, largely blaming Page for the murder. At that time petitioner also, voluntarily and without being questioned at all about it, identified a certain object (an electric iron) that was in the room as having been taken by Page from the Bennet apartment. After this statement was made by Gardiner, Page also made an oral confession. All of this occurred on December 4, 1964. Between that time and the time of the trial in June of 1965, no mention of any coercion in connection with these statements was made. At the trial, however, petitioner testified out of the presence of the jury that he had been beaten, coerced, threatened, and forced to confess, and that nothing contained in his statement was either true or voluntarily said by him. The Trial Judge saw and heard all of the witnesses, including all of the police officers involved, as well as both defendants. Both petitioner and his co-defendant were represented by extremely able counsel, Nils Douglas, Esquire, and John P. Dowling, Esquire, respectively, and at least 177 pages of testimony on this subject alone were taken. The Trial Judge concluded that the evidence overwhelmingly supported the conclusion that petitioner's statements were freely and voluntarily given and were thus admissible in evidence. In his Per Curiam, the Trial Judge said:

"As to the written statements of Gardiner, the defendant, Gardiner, took the stand and stated that the police had beaten him and forced him to sign, which was denied by all officers present. On cross examination he denied that he told the officers any de-

tails, yet the confession recited facts that only he could have given the officers; in fact, he described an article taken in the burglary, namely, an iron about which the police had no knowledge. At no time, prior to taking the stand, did he make a complaint of having been struck nor did he produce any witness to whom he had complained. A mere reading of his testimony will convince anyone of its untruthfulness. The State produced each and every witness to refute Gardiner's contention, and it was and is the opinion of the Court that the State had carried its burden of establishing that the confessions were free and voluntary."

After a careful, independent review of the record, this Court also concludes that petitioner's confessions were freely and voluntarily given, and thus admissible in evidence for whatever weight the jury saw fit to give to them. This same conclusion was reached by the Louisiana Supreme Court after hearing the appeal taken by Page. (Petitioner Gardiner did not appeal his conviction or sentence.) The Louisiana Supreme Court concluded:

"The record refutes Page's complaint that he was induced to make the oral confession by a promise of leniency to his brother. It also refutes Gardiner's testimony that the police obtained his confession by beating him. The evidence supports the trial judge's finding the confessions were voluntary. The State has borne its burden of proof." State v. Page, 251 La. 810, 206 So.2d 503 at 508.

██ ██ Petitioner relies on Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, to support his contention that he was improperly interrogated without counsel. Since *Miranda* had not been decided at the time petitioner's trial took place, its holding is not applicable to petitioner's case. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. However, if applicable, *Escobedo*, which was decided prior to petitioner's trial, would apply. I concur, however, with the disposition made of this contention by the Louisiana Supreme Court when it said:

"As pointed out in Johnson v. State of New Jersey, supra, the precise holding of *Escobedo* is that statements obtained by police during interrogation may not be used against the defendant at a criminal trial:

"'[W]here * * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent * * *.'

"See also State v. Johnson, 249 La. 950, 192 So.2d 135, cert. denied 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374, and State v. Bourg, 248 La. 844, 182 So.2d 510, cert. denied 385 U.S. 866, 87 S.Ct. 127, 17 L.Ed.2d 93.

"The trial judge found no violation of the constitutional safeguards announced in *Escobedo*. The record reflects the officers warned both defendants of their right to remain silent. They also advised Page of his right to consult an attorney. Neither defendant requested to contact an attorney. Hence, the record fully supports the finding of the trial judge." 206 So.2d at 508, 509.

After a thorough, independent review of this entire record, the conclusion is inescapable that it fully supports the conclusions of both the Trial Court and the Louisiana Supreme Court and reflects, without question of doubt, that petitioner's constitutional rights were

adequately and abundantly safeguarded and protected throughout the proceedings had against him in the State Courts of Louisiana. Hence, for these reasons, petitioner's application for a writ of habeas corpus must be denied. Judgment will be entered accordingly.