320 So.2d 155 (1975)
STATE of Louisiana
v.
Willie E. CALLIHAN.
No. 56227.
Supreme Court of Louisiana.
October 1, 1975.
Rehearing Denied October 31, 1975.
*156 Timothy A. O'Brien, III, Student Practitioner, Arthur A. Lemann, III, Supervising Atty., Loyola Law School Clinic, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leonard E. Yokum, Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
This is an out-of-time appeal,[1] coupled with an application for a writ of habeas corpus, from the defendant's conviction on November 5, 1969 for manslaughter. On June 28, 1966 Mrs. Dorothy Gatlin succumbed to stab wounds she had received the night before. The defendant, Willie Callihan, was taken into custody on June 28, 1966 and was subsequently indicted and convicted. In this out-of-time appeal, defendant relies on two bills of exceptions taken at the trial, and four additional assignments of error.[2] Since we find merit in the bills of exceptions, we pretermit discussion of the additional assignments of error.[3]
Bills of Exceptions Nos. 4 and 8 relate to the trial court's ruling, on a motion to suppress, that an inculpatory statement given by the defendant and reduced to writing on June 29, 1966 was admissible. The defendant was taken into custody by Tangipahoa Parish deputies on June 28, 1966 between 9:00 and 10:00 a. m. after questioning at his home. He was brought to the jail and questioned further by officers about the Gatlin stabbing. At no time before or during this questioning was he advised of his right to remain silent or to have an attorney present during questioning.
Around 4:00 p. m. on June 29, 1966 (either the same day or the day after he was first taken into custody) the defendant told the deputies he would make a statement. Thereupon, an attorney was secured to advise the defendant of his rights. When this attorney arrived from his office across the street, he advised the defendant that he did not have to make a statement and that he should not do so. Nevertheless, the defendant made a statement, in which he confessed to entering Mrs. Gatlin's home and stabbing her when she confronted him. The trial judge ruled that the statement was free and voluntary, and therefore admissible at the trial. This ruling constitutes reversible error.
On June 13, 1966, some three years before this trial,[4] the United States Supreme Court handed down its decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The Supreme Court summarized its holding as follows:
"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized.

*157 procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." (384 U.S. 436, 479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694). (Emphasis added).
It is clear from the record that the defendant was not informed of these rights before questioning began. He was advised of his rights only after he informed the deputies that he would make a statement, and then by the attorney. An after-the-fact attempt to ritualize the safeguards of Miranda cannot be used to deprive the defendant of the very rights the Miranda decision sought to protect:
"To be sure, the records do not evince overt physical coercion or patent psychological ploys. The fact remains that in none of these cases did the officers undertake to afford appropriate safeguards at the outset of the interrogation to insure that the statements were truly the product of free choice." (Miranda v. Arizona, 384 U.S. 436, 457, 86 S.Ct. 1602, 1619, 16 L.Ed.2d 694).
In Westover v. United States, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), a companion case to Miranda, handed down that same day, the Supreme Court recognized that a post-interrogation attempt to meet the Miranda requirements cannot succeed. In the Westover case, the defendant had been questioned by state authorities without being informed of his right against self-incrimination. Immediately thereafter, he was turned over to FBI agents who advised him of his rights before questioning him. The FBI agents secured a confession which was used against him in a federal prosecution. The Supreme Court held that the confession was inadmissible:
". . . Although the two law enforcement authorities are legally distinct and the crimes for which they interrogated Westover were different, the impact on him was that of a continuous period of questioning. There is no evidence of any warning given prior to the FBI interrogation nor is there any evidence of an articulated waiver of rights after the FBI commenced its interrogation. The record simply shows that the defendant did in fact confess a short time after being turned over to the FBI following interrogation by local police. Despite the fact that the FBI agents gave warnings at the outset of their interview, from Westover's point of view the warnings came at the end of the interrogation process. In these circumstances an intelligent waiver of constitutional rights cannot be assumed." (384 U.S. 436, 496, 86 S.Ct. 1602, 1639, 16 L. Ed.2d 694). (Emphasis added).
Like Westover, in the instant case the warnings came only at the end of the interrogation process, that is, only after the defendant, having already been questioned, decided to make a statement. The fact that a lawyer was called at this point to advise the defendant that he did not have to make any statements cannot serve to render the statement admissible.
*158 This court has held that the burden is on the State to prove beyond a reasonable doubt that the legal requirements for the voluntariness of statements made during custodial interrogation were complied with. State v. Monroe, 305 So.2d 902 (La.1974); State v. Bray, 292 So.2d 697 (La.1974); State v. Skiffer, 253 La. 405, 218 So.2d 313 (1969). One of those legal requirements is that the defendant be given the "Miranda" warnings before custodial interrogation begins. State v. Levy, 292 So.2d 220 (La.1974); see State v. Tarrance, 252 La. 396, 211 So.2d 304, 308 (1968), cert. den., 393 U.S. 1038, 89 S.Ct. 662, 21 L.Ed.2d 586, wherein this court discussed Miranda as follows:
". . . While there is evidence which supports the judge's observation, we do not think it is the number of warnings that controls but rather the time they are given by the investigating officers. In other words, it was required that appellant be advised of his constitutional rights at the time the investigation of Mrs. Millien's death ceased to be exploratory in nature, i. e., when the officers focused their attention on appellant as the guilty party in a homicide and sought to secure inculpatory statements from him. For the protective procedures erected in the Miranda case, as we understand it, make it obligatory for the officers to inform an accused of his privilege to remain silent and of his right to counsel when the individual is first subjected to interrogation while in custody at the police station, `* * * or otherwise deprived of his freedom of action in any significant way.' See Miranda v. State of Arizona, 86 S.Ct. at page 1612, 16 L.Ed.2d at page 725."
Since the record is clear that the defendant was not informed of his rights at the time custodial interrogation began, the motion to suppress the inculpatory statement should have been granted.
For the reasons assigned, the judgment and conviction are reversed and set aside, and the case is remanded for a new trial in accordance with law.
SANDERS, C. J., dissents and will assign written reasons.
SUMMERS and MARCUS, JJ., dissent.
SANDERS, Chief Justice (dissenting).
In 1970, the manslaughter conviction of Willie E. Callihan was before this Court on appeal. He was represented by able counsel and relied upon nine bills of exceptions for the reversal of his conviction. After review, a unanimous Court affirmed his conviction. See State v. Callihan, 257 La. 298, 242 So.2d 521 (1970). Three years later, this Court denied defendant's application for habeas corpus. State ex rel. Callahan v. Henderson, La., 275 So.2d 787 (1973).
In 1974, in a habeas corpus proceeding in the United States District Court, the court ordered an out-of-time, second appeal to this Court.
The majority has reversed the conviction because of a failure to advise defendant, who confessed the crime, of his constitutional rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). I disagree.
It is true that the Miranda warnings were not given at the time of his arrest and first interrogation. The day following his arrest, however, an attorney was appointed to represent him. Before making the statement complained of, defendant was advised of his rights. His attorney was present at the time he made the statement. The attorney testified that the defendant's statement was free and voluntary.
In my opinion, the confession was sufficiently insulated from the first interrogation to make it admissible. See Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L. *159 Ed.2d 423 (1967); Darwin v. Connecticut, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968).
For the reasons assigned, I respectfully dissent.
NOTES
[1] Defendant's conviction was first upheld by this court in State v. Callahan, 257 La. 298, 242 So.2d 521 (1970). A subsequent application for a writ of habeas corpus was denied. State ex rel. Callahan v. Henderson, 275 So. 2d 787 (La.1973). Subsequent federal habeas relief resulted in this out-of-time appeal. State ex rel. Callahan v. Parish of Tangipahoa et al., # 73-2016, U.S. District Court, Eastern District of La.
[2] The four additional assignments of error allege ineffective assistance of trial counsel.
[3] On the prior appeal to this court the same bills were considered, but only as explained by the per curiam of the trial judge; even though the evidence was in the record before us, the court declined to consider it because the bills of exceptions did not purport to incorporate it.
[4] Miranda applies to trials beginning after June 13, 1966. State v. Page, 251 La. 810, 206 So.2d 503 (1968).