GAUDIN, Judge.
Appellant Jose Cuevas pled guilty in the 24th Judicial District Court to LSA-R.S. 14:62.3, unauthorized entry of an inhabited dwelling, after reserving his right under State v. Crosby, 338 So.2d 584 (La.1976), to appeal to this Court questioning the constitutionality of the statute. We find the statute constitutional and we affirm Cue-vas’ two-year suspended jail sentence and two years’ probation with special conditions.
R.S. 14:62.3 reads:
“Unauthorized entry of an inhabited dwelling is the intentional entry by a person without authorization into any inhabited dwelling or other structure belonging to another and used in whole or part as a home or place of abode by a person.
“Whoever commits the crime of unauthorized entry of an inhabited dwelling shall be fined not more than one thousand dollars or imprisoned with or without hard labor for not more than six years, or both.”
Cuevas, arguing that this wording is vague and broad and that it fails to give effective notice of what the supposed crime is, cites Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 22 (1972) and State v. Dousay, 378 So.2d 414 (La.1979). In Grayned, the Supreme Court of the United States declared an antipicketing ordinance unconstitutional while finding that an antinoise ordinance was constitutional.
The antipicketing ordinance read:
“A person commits disorderly conduct when he knowingly:
“Pickets or demonstrates on a public way within 150 feet of any primary or secondary building while the school is in session and one-half hour before the school is in session and one-half hour after the school session has been concluded ...”
This ordinance was found unconstitutional not because it was either vague or over-broad, as contended by the person convicted, but because peaceful picketing on a *560 public sidewalk was a right protected by the First Amendment to the United States Constitution. Here, Cuevas does not suggest that breaking into another’s residence is a constitutionally-guaranteed right.
In the Dousay case, the district judge and the Supreme Court of Louisiana held a part of a sanitary code unconstitutional because of vagueness. The defendant had been charged because he violated “... the sanitary code by failing to take all usual and reasonable measures and precautions to secure and ensure the proper operation and maintenance of a sewerage treatment plant or sewerage disposal system ...”
The Supreme Court found legal fault with usage of the words “usual,” “reasonable” and “proper.” The Court said that “... businessmen would be forced to guess their meaning.”
The statute in question here, R.S. 14:62.-3, is clear, precise and readily understandable by persons of average intelligence. See City of Baton Rouge v. Norman, 290 So.2d 865 (La.1974), in which the Supreme Court held a statute very similar to the instant one constitutional.
From Norman, supra, at page 868:
“Generally the objection that a statute is vague and overbroad may be satisfied by language which provides an adequate warning as to what conduct is proscribed and which marks boundaries sufficiently distinct for judges and juries to administer the law in accordance with the legislative will. United States v. Petrillo, 332 U.S. 1, 67 S.Ct. 1538, 91 L.Ed. 1877 (1946).
“The requirement of definiteness need only give a person of ordinary intelligence fair notice that his conduct is criminal. To accomplish this the legislature may employ generic terms. Cumbersome enumeration or explicit delineation of all possible situations is not required. The enumeration in a statute of every item or variation in conduct is frequently impossible. State v. Wiener, 245 La. 889,161 So.2d 755 (1964). See also State v. Willis, 253 La. 893, 221 So.2d 39 (1969); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966); State v. Truby, 211 La. 178, 29 So.2d 758 (1947); State v. Hunter, 164 La. 405, 114 So. 76 (1927).
“In light of these principles it cannot be said that persons of ordinary intelligence are unable to know that the ordinance prohibits entering ‘upon the premises of another person, without the consent or permission of the owner.’ That is the context of this prosecution, and this defendant could know that he was violating the law when he went upon the carport without the owner’s consent ...
“It is suggested that there are many situations which could arise which were not intended to come within the prohibition of the statute. To apply the statute as it reads, it is argued, would make persons coming to visit, or to deliver packages, etc., guilty of a criminal trespass. For this reason it is said the statute is overbroad. We cannot agree. In the first place those situations are not before us, and if they were we would undoubtedly find that an implied consent of the owner exists to such lawful entries upon his property. A valid defense could, in this manner, be constructed by implication ...”
Cuevas does not contend that he had the house-owner’s implied consent. At the time he entered his guilty plea, Cuevas explained that “... I was walking from a friend of mine’s house to another friend and somebody got behind me with a gun, so I had to run and I went inside this man’s house ... I knocked on the door and no one answered, so I went through the window ... yeah, I broke the window ...”
We find R.S. 14:62.3 to contain words of ordinary and common understanding, and in line with the Supreme Court’s reasoning in the Norman decision. The words in the statute have a generally accepted meaning and give fair notice that conduct such as Cuevas’ is forbidden, although had appellant gone to trial he could have based a defense on his alleged circumstances.
See also Adderley v. Florida, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) cited *561 in Norman; City of Lake Charles v. Henning, 414 So.2d 331 (La.1982); and State v. Toomer, 395 So.2d 1320 (La.1981), where the Supreme Court noted at page 1329:
“The constitutional guarantee that an accused be informed of the nature and cause of the accusation against him requires that penal statutes described unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. State v. Mallett, 357 So.2d 1105 (La.1978); State v. Gisclair, 363 So.2d 696 (La.1978).
“There was no evidence offered to show that lawyers, judges and the general public could not comprehend the clear meaning of the law. The mere fact that some few persons misunderstand a particular law does not mean that the fault lied with the law ...”
For these reasons, appellant’s plea of guilty and his two years’ suspended jail sentence with two years’ probation are affirmed.
AFFIRMED.