NOT DESIGNATED FOR PUBLICATION

# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 22-472

**STATE OF LOUISIANA**

**VERSUS**

**JERRY LEE EAVES**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 94,007
HONORABLE SCOTT WESTERCHIL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CHARLES G. FITZGERALD
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald,
Judges.

**CONVICTION AFFIRMED.**

**Thomas C. Damico**
**Damico & Stockstill**
**8048 One Calais Avenue, Suite A**
**Baton Rouge, Louisiana  70809**
**(225) 769-0190**
**Counsel for Defendant/Appellant:**
     **Jerry Lee Eaves**


**Terry W. Lambright**
**District Attorney,**
**Thirtieth Judicial District Court**
**Lea R. Hall, Jr.**
**Assistant District Attorney**
**Post Office Box 1188**
**Leesville, Louisiana  71446**
**(337) 239-2008**
**Counsel for Appellee:**
     **State of Louisiana**

**FITZGERALD, Judge.**

Defendant, Jerry Lee Eaves, appeals his conviction for pandering.

## PROCEDURAL HISTORY

On December 5, 2018, seventeen-year-old J.E. and her mother went to the Vernon Parish Sheriff's Department to file a complaint against Defendant for an incident that occurred the previous day.[1] Defendant is J.E.'s estranged father. J.E. provided a formal written statement and consented to a search of her cell phone. Based on the information that was obtained, Defendant was arrested.

In May 2019, Defendant was charged by bill of information with pandering, in violation of La.R.S. 14:84(A)(1) and (A)(5). The bill of information further stated that the victim, J.E., was under the age of eighteen years at the time of the offense, and this increased Defendant's sentencing exposure under La.R.S. 14:84(B)(2). Defendant pled not guilty, and the matter proceeded to jury trial.

Trial began on October 18, 2021. Two days later, the jury unanimously found Defendant guilty of pandering involving a person under the age of eighteen. Prior to sentencing, the State filed a habitual offender bill, and Defendant was adjudicated as a fourth felony offender. Defendant was then sentenced to fifty years at hard labor. Defendant now appeals.

On appeal, Defendant asserts that there was insufficient evidence to support his conviction for pandering. This is his only assignment of error.

---

[1] Pursuant to La.R.S. 46:1844(W), the victim's initials are used to protect her identity.

## LAW AND ANALYSIS

### I. Errors Patent

In accordance with La.Code Crim.P. art. 920, we review appeals for errors patent on the face of the record. After reviewing the record, we find no errors patent.

### II. Defendant's Assignment of Error

Defendant asserts that the State failed to prove beyond a reasonable doubt that he was guilty of pandering. Defendant thus challenges the sufficiency of the evidence.

A sufficiency-of-the-evidence challenge is reviewed on appeal under the standard set forth by *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original). "This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact-finder." *State v. Pigford*, 05-477, p. 6 (La. 2/22/06), 922 So.2d 517, 521. The appellate court's function is not to assess the credibility of witnesses or to reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So.2d 442.

A reviewing court must afford great deference to a jury's decision to accept or reject the testimony. *State v. Allen*, 36,180 (La.App. 2 Cir. 9/18/02), 828 So.2d 622, *writs denied*, 02-2595 (La. 3/28/03), 840 So.2d 566, and 02-2997 (La. 6/27/03), 847 So.2d 1255, *cert. denied*, 540 U.S. 1185, 124 S.Ct. 1404 (2004). "Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency." *Id.* at 626.

2

*Summary of the Witness Testimony*

Detective Rhonda Jordan was the State's first witness. Detective Jordan is a special victim detective with the Vernon Parish Sheriff's Department. During her interview of J.E., Detective Jordan read a stream of messages on J.E.'s cell phone. These messages were sent primarily by Defendant to J.E. over the course of six months. Detective Jordan testified that many of Defendant's messages were inappropriate and vulgar, including some that discussed J.E. making money with her body and Defendant ensuring her safety. All of the messages were authenticated and admitted into evidence.

J.E. was the State's second witness. J.E. testified that she was seventeen years old when the events at issue occurred. J.E. acknowledged that Defendant is her biological father; however, she clarified that Defendant had been mostly absent from her life until May 2018 when they began exchanging messages on Facebook Messenger. J.E. explained that her initial conversations with Defendant mainly involved his job, her school life, and her need for financial support. Defendant asked her for photographs of her face, which she sent. But over time, Defendant began asking for photographs of her full body, which she did not send.

The State then homed in on the events of December 4, 2018. J.E. testified that that Andrea Millegan (who was then dating her father), picked her up from school that afternoon. Thereafter, they drove to Defendant's location. After hanging out for a bit, the three of them went for a drive. Eventually Andrea was dropped off at her house. When Andrea exited the car, Defendant instructed J.E. to drive. J.E. complied. According to J.E., Defendant soon asked to use her cell phone because his was purportedly out of service. J.E. again complied. Defendant, in turn, accessed a password-protected folder in J.E.'s Snapchat account; this is where J.E. kept her

private pictures and videos.  J.E. explained that Defendant began looking at these pictures and videos, making crude remarks about how the two of them could make money using her vagina.  Defendant then forwarded some of the videos to himself through Facebook Messenger.  At this point, J.E. turned the car around and drove back to Andrea's house.

Upon arriving at Andrea's house, Defendant returned the cell phone to J.E.  Next, Andrea drove Defendant and J.E. to another location.  As J.E. explained, it was during this drive that Defendant sent her a series of explicit messages, pictures, and videos.  J.E. was in the passenger seat next to Andrea, and Defendant was alone in the backseat of the car.  J.E. testified that in these messages, Defendant stated that he had created a profile for J.E. on Pornhub, and he gave her the access information and requested that she log in to the account.[2]  Defendant then sent J.E. pictures of his penis and real-time videos of himself masturbating in the backseat.  Finally, Defendant sent messages explaining that J.E. could earn money, specifically five hundred dollars, by engaging in oral sex with the promise that he would "be right there" to protect her.  According to J.E., Defendant knew that she needed money, and he was proposing that she engage in prostitution.

J.E. testified that she told Andrea about the messages and videos when Defendant briefly got out of the car.  Andrea, in turn, looked at what was sent.  And when Defendant returned to the car, Andrea screamed at him.  Andrea and J.E. then drove off without Defendant.  The next day, J.E. and her mother reported the incident to the police.

---

[2] Pornhub is an adult website that allows users to post pornographic videos.

Andrea Millegan provided similar testimony about of the events of December 4, 2018. However, Andrea recalled that J.E.'s demeanor had drastically changed when Defendant and J.E. arrived at Andrea's house to pick her up: J.E. seemed frightened, and Defendant was furious and ranting upon their return. According to Andrea, this is when Defendant told her to talk to J.E. and "tell her you don't give it away for free if you can sell it."

***Sufficiency of the Evidence***

Louisiana Revised Statutes 14:84(A) defines pandering as follows:

A. Pandering is any of the following intentional acts:

(1) Enticing, placing, persuading, encouraging, or causing the entrance of any person into the practice of prostitution, either by force, threats, promises, or by any other device or scheme.

. . . .

(5) Consenting, on the part of any parent or tutor of any person, to the person's entrance or detention in the practice of prostitution.

Prostitution is defined as "[t]he practice by a person of indiscriminate sexual intercourse with others for compensation." La.R.S. 14:82(A)(1). The term "sexual intercourse" is further described as "anal, oral, or vaginal sexual intercourse." La.R.S. 14:82(B). Notably, the State is not required to prove the act of sexual intercourse to satisfy its prosecution for pandering. *State v. Bourg*, 248 La. 844, 182 So.2d 510, *cert. denied*, 385 U.S. 866, 87 S.Ct. 127 (1966).

Pandering, moreover, is a general intent crime. *State v. Fontenot*, 521 So.2d 447 (La.App. 4 Cir. 1988). General criminal intent is "present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." La.R.S.

14:10(2). The criminal intent necessary to sustain a conviction in general intent crimes is shown by the commission of the acts which have been declared criminal. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So.2d 7.

Here, Defendant contends that he sent only one text message to his daughter suggesting that she perform oral sexual intercourse in exchange for money. He argues that one message is insufficient to prove a practice of indiscriminate sexual intercourse and that there had been no force, threats, promises, or other devices or schemes. Additionally, Defendant notes that no action was taken in furtherance of the income possibilities, nor were there any attempts by J.E. to engage in prostitution.

The State, on the other hand, argues that Defendant made multiple suggestions to J.E. that she engage in oral sexual intercourse in exchange for money. According to the State, this squarely meets the statutory definition of pandering.

We now turn to the subject text messages. Defendant sent the following text messages to J.E. on Tuesday, December 4, 2018:[3]

> [B]aby we going to ride an talk but then videos of you piping you cute ass an the message of you sucks [d***] you need to start getting them nigga money by eating your sweet lol hot [p****] you so beaut I fully an you like sexy like dad but get your money out them but what we talk bout stays with us but you are sexy an your body is do you like playing with your Lil [p****] w g at you think bout making money playing with your Lil hot [p****] just you rubbing your [p****] 1000 dollars a show and dad be right there I git ol dudes will pay an you know how your [p****] wants played with
>
> That makes money so please just know daddy want let nothing happens to you but you push that [p****] playing with it you get payed your [p****] is wet an you like playing with your Lil [p****] don't you so

---

[3] We have reproduced the language exactly as written. Because of the vulgarity, we have edited some words by using brackets and including only the first letter of the original word. Otherwise, we have not corrected the numerous grammatical and punctuation errors or used [sic]. We recognize that some of the messages are difficult to understand.

6

why not make money doing it how many times you got that good [d***] in your [p****]

    . . . .

Make that money baby I do it can't live life broke remember that

    . . . .

Send me the video of toy ass piping I'm show you how quick the money comes

I just got 85 since we left t b e house for eeal

That vied we got 800 for here playing with her Lil [p****] while I video her

Are you getting what I'm sending

    . . . .

Don't feel weird about what we talk bout I am just being honest you just like me but when I seen pornhub an you [f******] like that your Lil baled [p****] is pretty I watched you time an time again but just want tou n to do an play right

    . . . .

So that is how you going to do dad an I'm just being honest an up front with you an worries bout you an sex is good but it can get out of control of you don't watch it I worried bout you but baby I hate seen in you stress so I'm just putting it to you like it is show you hw to get paid an you want have no worries at all an daddy be rig uh t their an you get paid the first time an see how easy it is you make you [p****] a gold mine for real daddy hustle an get it I'm back selling but you need money today a you get it but just trust daddy

Following that message, J.E. testified that Defendant sent her three videos. Although the videos were lost by law enforcement in a ransomware attack, screenshots of the message conversation show a preview of each video and the testimony provided detail. Two of the video previews show a hand holding a penis. The third video preview appears to show a female lying in bed. The text messages of December 4, 2018, then continued:

So look real close an pornhub teens [f\*\*\*\*\*\*] an type your name and 04 an you pop up really answer one question you like getting [f\*\*\*\*\*] hi just be honest an you play with your Lil [p\*\*\*\*] a lot because you like it an you know you hot as [f\*\*\*\*\*] an I love you an never let no body do you wrong but cam I ask you a real quest an you be honest

Real talk the question

Can I ask you with out you getting mad

Say some one got 500 dollars right now to eat your Lil [p\*\*\*\*] for 15 mins an I'm be right there see money real

It sends money first an then eats

J.E. did not answer any of these text messages. Then, a few hours later, Defendant flooded J.E. with more texts, but this time pleading that she remain silent about what he had done. Here are a few of these messages:

Well look send me the pic off the cloud an I'm stop taking bout any other stuff but I ant said shit bout your vied so keep quit bout me an what you seen your promise

. . . .

I'm sorry love you an pleas keep this between us primoes

In summary, for this court to affirm Defendant's conviction for pandering, we must determine whether, in viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that Defendant knowingly enticed, persuaded, and encouraged J.E. to enter into the practice of prostitution in exchange for money. With that in mind, we conclude that the evidence here is overwhelming.

Take, for example, the following text message: "Say some one got 500 dollars right now to eat your Lil [p\*\*\*\*] for 15 mins an I'm be right there see money real[.]" Defendant promised J.E. that if she engaged in oral sexual intercourse for fifteen minutes, she would receive money and he would be present. This statement, when

8

combined with the entire stream of similar messages and the witness testimony, sufficiently supports Defendant's conviction for pandering under La.R.S. 14:84(A)(1).[4]

## DISPOSITION

For the above reasons, Defendant's conviction for pandering is affirmed.

**CONVICTION AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.

---

[4] It is unclear whether the jury convicted Defendant under subsection of (A)(1) or (A)(5) of the pandering statute. However, because there is sufficient evidence of Defendant's guilt under La.R.S. 14:84(A)(1), we need not determine whether the evidence was also sufficient to convict Defendant under La.R.S. 14:84(A)(5).